UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------

ANTHONY ANDRE PAUL and ALBERTY PAUL, as
co-Administrators of the Estate of ANTHONY ANDRE
PAUL II deceased,

Plaintiffs,

-against-

THE CITY OF NEW YORK, NEW YORK CITY
EMERGENCY MEDICAL SERVICES OF THE NEW
YORK CITY FIRE DEPARTMENT, NORTH CENTRAL
BRONX HOSPITAL, NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,  DEPUTY CHIEF
GIORDANO, individually and his capacity as a member of
the New York City Police Department, CAPTAIN
LINDQUIST, individually and his capacity as a member of
the New York City Police Department, CAPTAIN
MCCARTHY, individually and his capacity as a member
of the New York City Police Department, CAPTAIN
WILLIAMS, individually and his capacity as a member of
the New York City Police Department, LIEUTENANT
MALONEY, individually and his capacity as a member of
the New York City Police Department, SERGEANT
DAMERON, individually and his capacity as a member of
the New York City Police Department, SERGEANT
HICKS, individually and his capacity as a member of the
New York City Police Department, DETECTIVE JACK,
individually and his capacity as a member of the New York
City Police Department, POLICE OFFICER NEWMAN,
individually and his capacity as a member of the New York
City Police Department, POLICE OFFICER SWEETING,
individually and his capacity as a member of the New York
City Police Department, POLICE OFFICER HEREDIA,
individually and his capacity as a member of the New York
City Police Department, POLICE OFFICER
MCMORROW, individually and his capacity as a member
of the New York City Police Department,

Civil Action No. 16-cv-01952


**VERIFIED COMPLAINT**


**PLAINTIFF DEMANDS A
JURY**

1

POLICE OFFICER BAEZ-VERAS, individually and his capacity as a member of the New York City Police Department, Department, POLICE OFFICER MUNOZ, individually and his capacity as a member of the New York City Police Department, Department, DETECTIVE DIFRANCHESLA, individually and his capacity as a member of the New York City Police Department, Department, DETECTIVE HEFNER, individually and his capacity as a member of the New York City Police Department, Department, POLICE OFFICER RAMOS, individually and his capacity as a member of the New York City Police Department, Department, DETECTIVE MCNAMARA, individually and his capacity as a member of the New York City Police Department, Department, DETECTIVE MCCORMACK, individually and his capacity as a member of the New York City Police Department, Department, DETECTIVE MCCARTHY, individually and his capacity as a member of the New York City Police Department, Department, POLICE OFFICER BUNDY, individually and his capacity as a member of the New York City Police Department, Department, DETECTIVE GEZURIAN, individually and his capacity as a member of the New York City Police Department, Department, SERGEANT O'DOHERTY, individually and his capacity as a member of the New York City Police Department, Department, DETECTIVE WARGO, individually and his capacity as a member of the New York City Police Department, Department, JOHN and JANE DOES, said names being fictitious and intended to represent individual officers, members, agents, servants and/or employees of the New York City Police Department, New York City Health and Hospitals Corporation, North Central Bronx Hospital and/or New York City Emergency Medical Services of the New York City Fire Department in their individual and official capacity,

                                                    Defendants.

-----------------------------------------------------------------------X

Plaintiffs ANTHONY ANDRE PAUL and ALBERTY PAUL, as co-Administrators of the Estate of ANTHONY ANDRE PAUL II, deceased, by their attorneys, THE COCHRAN FIRM, as and for a Verified Complaint herein, respectfully set forth and allege:

## STATEMENT

1. In the late evening of July 1, 2015, into the early morning of July 2, 2015, Anthony Paul II had his constitutional rights to be free from excessive force, false arrest and torture violated by multiple NYPD police officers. He was tasered, in violation of NYPD protocol, he was viciously cut and wounded by an NYPD saw blade, and violently handcuffed despite having done nothing wrong to trigger such violence against him.

2. Anthony Paul II's only issue, one that he could not control, was to be suffering from an emotional disturbance. Yet, despite being locked in a room, not presenting a danger to himself or anyone else, members of the NYPD violated Mr. Paul's constitutional rights and their own policies by sawing their way into his room, cutting and slashing Mr. Paul in the process. Once sliced up and bleeding profusely, police entered his room and fired multiple tasers into his body also against NYPD rules of conduct. The NYPD officers then fired their tasers on information and belief, well more than the three cycles permitted by the rules.

3. Despite not having done anything other than exhibit signs of emotional disturbance, the NYPD effected an unlawful arrest of Mr. Paul and placed him in handcuffs.

4. Emergency Medical Services' personnel who were summoned to render assistance to Mr. Paul then committed malpractice by failing to administer sedatives to Mr. Paul under the circumstances, something that could have slowed his heart rate. This medical error was compounded by medical personnel at North Central Bronx Hospital where again, no sedatives were given to Mr. Paul.

3

5.     Shortly after arriving to the Hospital, Mr. Paul's heart stopped beating and he suffered a wrongful death.

6.     The NYPD, EMS and City officials did not apologize to the Paul family or admit their willful violation of Mr. Paul's rights. Instead, on or about August 4, 2015, Police Commissioner William Bratton demonized Mr. Paul and in the process tried to cover up the NYPD's offensive conduct by claiming that the incident leading to Mr. Paul's death resulted from Mr. Paul being high on K2, a synthetic marijuana. Bratton falsely stated:

> "As the personnel were attempting to saw a hole through the door with an electric saw, this individual was so out of it, he literally grabbed hold of this electric saw with both hands and was totally impervious to the pain that was being inflicted upon him, and it took quite a few efforts on the part of our officers to ultimately subdue him."

7.     The statement was made in bad faith, as there was no proof whatsoever that the NYPD had supporting the claim that Mr. Paul had used K2. Since the NYPD, just weeks before Mr. Paul's death, had killed another African-American male suffering an emotional disturbance in the Bronx on June 8, 2015, the purpose of the press conference on K2 was to shield the NYPD from criticism of its unconstitutional treatment of the mentally ill and emotionally disturbed.

8.     Two different toxicology tests performed on Mr. Paul following his death showed that there was not a single bit of K2 in his system. Yet still no apology.

9.     The City and NYPD have gone to great lengths to prevent public disclosure of the excessive force, violations of NYPD policy and the Constitutional violations they committed against Mr. Paul. They have willfully violated a Court Order that required them to disclose video of the interaction between police and Mr. Paul and instead risk possible sanctions by the Judge for their non-compliance.

10.     This lawsuit is meant to bring justice to the Paul family as well as to unmask the unlawful practices used by the NYPD in dealing with those citizens most in need of the public's help: the mentally ill.

## NATURE OF THE CLAIMS

11.     This is a civil action for compensatory, injunctive, punitive and exemplary damages for the constitutional violations, unlawful arrest, excessive force and/or cruel and unusual punishment, assault, battery, negligence, recklessness, and carelessness of the Defendants, which ultimately caused the Decedent's wrongful death.

12.     This action is to redress the deprivation under the color of statute, ordinances, regulation, custom or usage of a right, privilege and immunity secured to the Decedent by the United States Constitution, particularly, the 4th, 8th and 14th Amendments, 42 U.S.C. Sections 1983 and 1988, Monell, and the laws and statutes of New York State.

13.     This action arises out of an incident occurring on or about July 1, 2015 to July 2, 2015 resulting in the Decedents' death on July 2, 2015 at Defendant North Central Bronx Hospital.

14.     Defendants' conduct was knowing, malicious, wanton and in reckless disregard of the Decedent's rights.  As a result of their conduct, the Decedent was caused to suffer serious physical injuries, which resulted in his wrongful death.

## JURISDICTION & VENUE

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 (1-4) and 2202 as this case involves a federal question based on the Decedent's protected rights under the United States Constitution, particularly the 4th, 8th and 14th Amendments, 42 U.S.C. §§ 1983 and 1988, and Monell.  Plaintiff further invokes the supplemental jurisdiction of this Court

to adjudicate state law claims pursuant to 28 U.S.C. § 1367. The matter in controversy exclusive of interest and costs exceeds $100,000 (one hundred thousand dollars).

16.     Venue is proper in this district under 28 U.S.C. § 1391 (b).

## PARTIES

### Plaintiff Anthony Andre Paul

17.     Plaintiff ANTHONY ANDRE PAUL resides at 13800 Bottlebrush Court, Wellington, Florida 33414.

18.     Plaintiff Anthony Andre Paul is the father of the decedent, Anthony Andre Paul II.

19.     On February 11, 2016, Plaintiff Anthony Andre Paul was duly appointed co-Administrator of his late son's Estate by Order of the Surrogate of Bronx County.

### Plaintiff Alberty Paul

20.     Plaintiff ALBERTY PAUL resides at 22-26 80th Street, East Elmhurst, New York 11370.

21.     Plaintiff Alberty Paul is the uncle of the decedent, Anthony Andre Paul II (hereinafter referred to as "the Decedent").

22.     On February 11, 2016, Plaintiff Alberty Paul was duly appointed co-Administrator of his late nephew's Estate by Order of the Surrogate of Bronx County.

### Defendants

23.     Defendant CITY OF NEW YORK is a municipal corporation duly existing under and by virtue of the laws of the State of New York and maintains its principal place of business at 100 Church Street, New York, New York 10007. As part of its function, the City of New York

6

operates the New York City Police Department (hereinafter "NYPD"). In this capacity, its employees who were involved in the incident at issue are named in this Complaint.

24. Defendant NEW YORK CITY EMERGENCY MEDICAL SERVICES OF THE NEW YORK CITY FIRE DEPARTMENT ("EMS") provides emergency medical ambulatory services within New York City and maintains its principal place of business at 9 Metrotech Center, Brooklyn, New York. At all relevant times, Defendant EMS was responsible for hiring, training, monitoring and supervising its employees.

25. Defendant NORTH CENTRAL BRONX HOSPITAL is a public hospital located at 3424 Kossuth Avenue, Bronx, New York 10467. At all relevant times, Defendant NORTH CENTRAL BRONX HOSPITAL was responsible for hiring, training, monitoring and supervising its employees.

26. Defendant NEW YORK CITY HEALTH AND HOSPITALS CORPORATION (NYC HHC) is a municipal corporation responsible for operating public hospitals and clinics in New York City and maintains its principal place of business at 346 Broadway, No. 5, New York, New York 10013. At all relevant times, Defendant NYC HH was responsible for hiring, training, monitoring and supervising its employees as well as managing, maintaining, operating and controlling North Central Bronx Hospital.

27. At all relevant times, Defendant DEPUTY CHIEF GIORDANO, was the Deputy Chief of the NYPD's Emergency Service Unit and a representative of the CITY OF NEW YORK, and Defendant DEPUTY CHIEF GIORDANO directly participated in the unlawful activity that is the subject of the Complaint.

28. At all relevant times, Defendant CAPTAIN LINDQUIST, was a Captain of the NYPD's Patrol Borough Bronx and a representative of the CITY OF NEW YORK, and

Defendant CAPTAIN LINDQUIST directly participated in the unlawful activity that is the subject of the Complaint.

29.     At all relevant times, Defendant CAPTAIN MCCARTHY, was a Captain of the NYPD's Emergency Service Unit and a representative of the CITY OF NEW YORK, and Defendant CAPTAIN MCCARTHY directly participated in the unlawful activity that is the subject of the Complaint.

30.     At all relevant times, Defendant CAPTAIN WILLIAMS, was a Captain of the NYPD's Force Investigations Division and a representative of the CITY OF NEW YORK, and Defendant CAPTAIN WILLIAMS directly participated in the unlawful activity that is the subject of the Complaint.

31.     At all relevant times, Defendant LIEUTENANT MALONEY, was a Lieutenant of the NYPD's 52nd Precinct and a representative of the CITY OF NEW YORK, and Defendant LIEUTENANT MALONEY directly participated in the unlawful activity that is the subject of the Complaint.

32.     At all relevant times, Defendant SERGEANT DAMERON, was a Sergeant of the NYPD's 52nd Precinct and a representative of the CITY OF NEW YORK, and Defendant SERGEANT DAMERON directly participated in the unlawful activity that is the subject of the Complaint.

33.     At all relevant times, Defendant SERGEANT HICKS, was a Sergeant of the NYPD's Technical Assistance Response Unit and a representative of the CITY OF NEW YORK, and Defendant SERGEANT HICKS directly participated in the unlawful activity that is the subject of the Complaint.

34.     At all relevant times, Defendant DETECTIVE JACK, was a Detective of the NYPD's Hostage Negotiation Team and a representative of the CITY OF NEW YORK, and Defendant DETECTIVE JACK directly participated in the unlawful activity that is the subject of the Complaint.

35.     At all relevant times, Defendant POLICE OFFICER NEWMAN, was a Police Officer of the NYPD's 52nd Precinct and a representative of the CITY OF NEW YORK, and Defendant POLICE OFFICER NEWMAN directly participated in the unlawful activity that is the subject of the Complaint.

36.     At all relevant times, Defendant POLICE OFFICER SWEETING, was a Police Officer of the NYPD's 52nd Precinct and a representative of the CITY OF NEW YORK, and Defendant POLICE OFFICER SWEETING directly participated in the unlawful activity that is the subject of the Complaint.

37.     At all relevant times, Defendant POLICE OFFICER HEREDIA, was a Police Officer of the NYPD's 52nd Precinct and a representative of the CITY OF NEW YORK, and Defendant POLICE OFFICER HEREDIA directly participated in the unlawful activity that is the subject of the Complaint.

38.     At all relevant times, Defendant POLICE OFFICER MCMORROW, was a Police Officer of the NYPD's 52nd Precinct and a representative of the CITY OF NEW YORK, and Defendant POLICE OFFICER MCMORROW directly participated in the unlawful activity that is the subject of the Complaint.

39.     At all relevant times, Defendant POLICE OFFICER BAEZ-VERAS, was a Police Officer of the NYPD's 52nd Precinct and a representative of the CITY OF NEW YORK, and

Defendant POLICE OFFICER BAEZ-VERAS directly participated in the unlawful activity that is the subject of the Complaint.

40.    At all relevant times, Defendant POLICE OFFICER MUNOZ, was a Police Officer of the NYPD's 52nd Precinct and a representative of the CITY OF NEW YORK, and Defendant POLICE OFFICER MUNOZ directly participated in the unlawful activity that is the subject of the Complaint.

41.    At all relevant times, Defendant DETECTIVE DIFRANCHESLA, was a Detective of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant DETECTIVE DIFRANCHESLA directly participated in the unlawful activity that is the subject of the Complaint.

42.    At all relevant times, Defendant DETECTIVE HEFNER, was a Detective of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant DETECTIVE HEFNER directly participated in the unlawful activity that is the subject of the Complaint.

43.    At all relevant times, Defendant POLICE RAMOS, was a Police Officer of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant POLICE OFFICER RAMOS directly participated in the unlawful activity that is the subject of the Complaint.

44.    At all relevant times, Defendant DETECTIVE MCNAMARA, was a Detective of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant DETECTIVE MCNAMARA directly participated in the unlawful activity that is the subject of the Complaint.

45.    At all relevant times, Defendant DETECTIVE MCCORMACK, was a Detective of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant DETECTIVE MCCORMACK directly participated in the unlawful activity that is the subject of the Complaint.

46.    At all relevant times, Defendant DETECTIVE MCCARTHY, was a Detective of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant DETECTIVE MCCARTHY directly participated in the unlawful activity that is the subject of the Complaint.

47.    At all relevant times, Defendant POLICE OFFICER BUNDY, was a Police Officer of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant POLICE OFFICER BUNDY directly participated in the unlawful activity that is the subject of the Complaint.

48.    At all relevant times, Defendant DETECTIVE GEZURIAN, was a Detective of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant DETECTIVE GEZURIAN directly participated in the unlawful activity that is the subject of the Complaint.

49.    At all relevant times, Defendant SERGEANT O'DOHERTY, was a Sergeant of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and Defendant SERGEANT O'DOHERTY directly participated in the unlawful activity that is the subject of the Complaint.

50.    At all relevant times, Defendant DETECTIVE WARGO, was a Detective of the NYPD's Emergency Services Unit and a representative of the CITY OF NEW YORK, and

Defendant DETECTIVE WARGO directly participated in the unlawful activity that is the subject of the Complaint.

51.     At all relevant times, Defendants "JOHN AND JANE DOES" were police officers and/or employees of the NYPD, EMS, NYC HHC and representatives of the City of New York, and they directly participated in the unlawful activity that is the subject of this Complaint.

## PROCEDURAL REQUIREMENTS

52.     Within the requisite time period, a Notice of Claim was filed against the City of New York, New York City Police Department, North Central Bronx Hospital, New York City Health and Hospitals Corporation, the New York City Fire Department, and the New York City Department of Emergency Medical Services on July 17, 2015.

53.     At least thirty (30) days elapsed since the Plaintiffs filed a Notice of Claim, and the Defendants have not adjusted the same.

54.     Oral Examination of the Plaintiff Anthony Andre Paul was held on October 26, 2015 in compliance with Section 50-H of the General Municipal Law.

55.     All conditions and requirements precedent to the commencement of this action have been complied with.

## FACTUAL ALLEGATIONS

56.     On July 1, 2015, the decedent ANTHONY PAUL II, was a resident of Narco Freedom, Inc.'s Freedom House 19 ("Freedom House 19"), a three-quarter house, located at 2846 Briggs Avenue, Bronx, New York 10458.

57.   At approximately 9:00 PM, a call was made to Defendant 911's Dispatch to respond to an alleged emotionally disturbed person ("EDP") matter involving the Decedent at Freedom House 19.

58.   Defendant NYPD's Emergency Services Unit ("ESU"), a specialized unit that is tasked with responding to emergencies involving barricaded suspects and EDPs, was responsible for handling the matter involving the Decedent.

59.   Upon arriving at the scene, Defendant Police Officers apparently saw Mr. Paul in an emotionally disturbed state.  Mr. Paul was naked, locked in his room, but did not present any danger to himself or others.

60.   On information and belief, the Defendant Police Officers inserted a camera / or cameras into Mr. Paul's room to observe and/or record what was transpiring in the room.

61.   On information and belief, the Defendant Police Officers attempted to unlock Mr. Paul's door on multiple occasions before they ultimately entered his room.

62.   On each occasion, Mr. Paul turned the locking mechanism on the door to prevent police entry.

63.   A hostage negotiator employed by Defendants attempted to talk Mr. Paul into allowing the police to enter his room and get him treatment for his emotional disturbance.  This attempt failed.

64.   Under the Police Patrol Guide, Section 216-05(c)(1), when police encounter an EDP who does not present an immediate threat of serious physical injury or death to himself or others, they are to: "[a]ttempt to isolate and contain the EDP…"

65.   Despite the fact that Mr. Paul was isolated and contained in his room for several hours and not presenting any immediate threat of serious physical injury or death to himself or

13

others, Defendant Police Officers, without justification and without a warrant, attempted to enter Mr. Paul's room to take him into custody.

66.     This decision violated the 4th Amendment as well as the standard set by the police in its own patrol guide.  It also followed an unconstitutional policy, practice and/or rule of the NYPD in dealing with EDPs who are isolated and contained within their rooms of forcing entry and needlessly escalating a non-confrontational encounter to one requiring a forceful confrontation between the EDP and police.

67.     This policy, practice and/or rule is in deliberate indifference to the constitutional rights of Mr. Paul, the deceased, and other EDPs and/or other mentally infirmed persons to be secure in their person(s).

68.     The NYPD were on notice of the harm that has often occurred in such circumstances at least as far back as April 29, 2014, when Chief of Department Phillip Banks wrote to the Police Commissioner, Bill Bratton, in connection with the Mohammad Bah encounter as follows:

> "On several occasions in the past, while attempting to make partial door breaches to insert cameras, the emotionally disturbed person has charged the door.  Once it occurred, ESU personnel have no choice but to engage. If the door was never breached, they [wouldn't have] found themselves in that situation."

69.     Showing complete and utter indifference to that warning, Defendants herein attempted to breach the door of Mr. Paul's room using a sharp saw blade.  When the blade breached the door, Mr. Paul, who was guarding the door, came into contact with the blade and had his arms and hands sliced up with more than 30 cuts.

70.     As Mr. Paul bled profusely from those cuts, Defendant Police Officers made a full breach of the door and upon entering used excessive physical force and unnecessary electric current (tasers) to arrest him and take him into custody.

71.     Specifically, Mr. Paul was tasered in violation of the NYPD Patrol Guide for Use of Tasers.

72.     NYPD Patrol Guide Section 212-117 clearly and unequivocally limits the number of tasers that can be used against a single person to one.  However, Mr. Paul was struck by at least three taser prongs which meant that at least two tasers were used against him in violation of the policy.

73.     In addition, on information and belief, the NYPD Defendant Police officers using the tasers failed to comply with Section 212-117 of the New York Patrol Guide by not reassessing the condition of Mr. Paul after each electrical discharge and by discharging well more than the three discharges permitted by the section.

74.     The violations of these sections, using 2 tasers simultaneously and cycling more than three currents was excessive, barbaric and ultimately a cause of Mr. Paul's pain, suffering and wrongful death.

75.     Mr. Paul was falsely arrested, had handcuffs placed on his bloodied wrists and EMS was called to take him to North Central Bronx Hospital following the tasering.

76.     Mr. Paul has meritorious claims against both EMS and North Central Bronx Hospital as both entities committed medical negligence by failing to give proper medical attention to Mr. Paul.  Specifically, after conferring with a New York State licensed physician regarding Mr. Paul's condition after being tasered and cut, Defendants EMS and North Central Bronx Hospital's failure to administer sedatives to him under the circumstances was a clear

departure from good and accepted medical practice and was a cause and/or contributing factor to

Mr. Paul's death.  (Annexed hereto as Exhibit 1 is a true and accurate copy of a Certificate of

Merit verifying the undersigned's consultation with a New York State licensed physician).

### FIRST CAUSE OF ACTION
### (Unlawful Entry under 42 U.S.C. §1983)

77.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1

through 76, inclusive, as if fully set forth herein.

78.    The individually-named Defendants in the course and scope of their employment

as police officers, agents, detectives, employees, lieutenants and/or captains and representatives

for the Defendant City of New York and the NYPD violated the 4th Amendment right of

Decedent Paul to be free from warrantless entries.  As a result of the warrantless entry, Mr. Paul

was physically assaulted, battered and tasered in direct contravention to the regulations and rules

set forth by the New York Patrol Guide.

79.    As a result of the Defendants' warrantless actions, Decedent ANTHONY

ANDRE PAUL II was severely injured and damaged, suffered great physical pain and emotional

upset and conscious pain and suffering that ultimately led to his wrongful death.

80.    The resulting injuries and wrongful death sustained by Decedent Paul were

caused solely by the Defendants, in violation of Decedent Paul's Civil and Constitutional rights,

and without any cause, provocation, or negligence on the part of Decedent Paul contributing

thereto.

### SECOND CAUSE OF ACTION
### (Excessive Force under 42 U.S.C. § 1983)

81.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1

through 80, inclusive, as if fully set forth herein.

82.     Regardless of whether the entry into Mr. Paul's room was justified, the individually-named Police Officer Defendants that entered his room used excessive physical force, violence and/or cruel and unusual punishment in taking Mr. Paul into custody.

83.     Upon information and belief, the individually-named Police Officer Defendants tasered Mr. Paul excessively in violation of the NYPD Patrol Guide, which limits such tasering to three upon any one person and then only after an assessment is made after each successive taser use.

84.     In addition, upon information and belief, individually-named Police officer Defendants used at least two tasers against the Decedent at the same time in violation of the NYPD Patrol Guide.

85.     Further, the individually-named Police Officer Defendants cut the Decedent with a saw as they entered the room. The use of the multiple tasers along with the saw was excessive force and/or cruel and unusual punishment under the 4th and/or 8th Amendments.

86.     As a result, Mr. Paul suffered serious injuries, loss of enjoyment of life and ultimately a wrongful death.

### THIRD CAUSE OF ACTION
### (Monell under 42 U.S.C. §1983)

87.     Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 86, inclusive, as if fully set forth herein.

88.     At all relevant times, Defendant City of New York's NYPD maintained a custom, practice and/or policy of forcefully entering the space of an isolated and contained EDP without justification or provocation. Such entry is a well-known trigger for an EDP that causes reactions requiring an escalation in the use of force against the EDP.

89.     This policy, custom and/or practice is deliberately indifferent to the constitutional rights of individuals like Plaintiff's Decedent herein and allowed for the individually-named Defendants to deprive the Decedent of his rights under both Federal and State law.

90.     As a result of the foregoing, the Decedent was needlessly injured and killed.

91.     At all relevant times, Defendant City of New York had a duty to screen applicants for hire, retention or discharge with the NYPD those employees who are not fit, suitable, properly trained and instructed, constituting a potential menace, hazard, or danger to the public or otherwise, those with vicious propensities and those with emotional, physical, psychological, racist, biased and/or physiological traits or characteristics unsuitable, unstable, or contraindicated for such employment.

92.     At all relevant times, it was the duty of Defendant City of New York to sufficiently hire, train, retain personnel within the NYPD's Police Academy and at the Command, Precinct and Patrol levels so as to sufficiently discipline, supervise, promulgate, and put into effect appropriate rules applicable to the duties, behavior and activities of their servants, agents, police officers, employees and/or personnel.

93.     Upon information and belief, the individually-named Police Officer Defendants that sawed and tasered the Decedent were improperly trained, supervised and retained in violation of the standards set out by the Monell doctrine.  Furthermore, the individually-named Police Officer Defendants responsible for Mr. Paul's tasering and saw wounds had prior histories of using excessive force and were known threats to members of the public and therefore improperly retained.

94.    As a result of the Defendants' deliberate indifference to its training, supervisory

and retention of the Defendant Police Officers, the Decedent was caused to suffer severe injuries

and damage that led to his death, without fault or contribution by the Decedent.

## FOURTH CAUSE OF ACTION
**(Negligent Hiring, Training and Supervision as to Defendant City of New York under New York State Law)**

95.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1

through 94 inclusive, as if fully set forth herein.

96.    At all relevant times, Defendant City of New York had a duty to screen applicants

for hire, retention or discharge with the NYPD those employees who are not fit, suitable,

properly trained and instructed, constituting a potential menace, hazard, or danger to the public

or otherwise, those with vicious propensities and those with emotional, physical, psychological,

racist, biased and/or physiological traits or characteristics unsuitable, unstable, or contraindicated

for such employment.

97.    At all relevant times, it was the duty of Defendant City of New York to

sufficiently hire, train, retain personnel within the NYPD's Police Academy and at the

Command, Precinct and Patrol levels so as to sufficiently discipline, supervise, promulgate, and

put into effect appropriate rules applicable to the duties, behavior and activities of their servants,

agents, police officers, employees and/or personnel.

98.    Upon information and belief, the individually-named Police Officer Defendants

that sawed and tasered the Decedent were improperly trained, supervised and retained in

violation of the standards set out by the NYPD Patrol Guide.  Furthermore, the individually-

named Police Officer Defendants responsible for Mr. Paul's tasering and saw wounds had prior

19

histories of using excessive force and were known threats to members of the public and therefore improperly retained.

99.     As a result of the Defendants' breach of duty, the Decedent was caused to suffer severe injuries and damage that led to his death, without fault or contribution by the Decedent.

## FIFTH CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. § 1983)

100.     Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 99, inclusive, as if fully set forth herein.

101.     Upon information and belief, among the individually-named Police Officer Defendants were supervisors who were assigned to supervise and control the actions of the named NYPD Defendant Officers.

102.     They also violated their supervisory duties by ordering the taser use on Mr. Paul without justification.  And once ordered, they failed to limit the use of tasers to only one and they failed to prevent Mr. Paul from being tasered an excessive number of times.

## SIXTH CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. § 1983)

103.     Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 102, inclusive, as if fully set forth herein.

104.     Each of the individually-named Police Officer Defendants had a duty to intervene when they saw illegal conduct taking place in connection with the taking into custody of the Decedent.

105.     In particular, once Mr. Paul was struck by multiple tasers and was tasered in excess of three times each of these Defendants had a duty to intervene and put a stop to the unconstitutional acts taking place.

20

106.   The failure of each of these Defendants to do so contravened Mr. Paul's constitutional rights and violated 42 U.S.C. § 1983.  As a result, Mr. Paul suffered serious physical injuries, including loss of enjoyment of life and a wrongful death.

## SEVENTH CAUSE OF ACTION
### (Negligence and/or Statutory Violations of New York State Law)

107.   Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 106, inclusive, as if fully set forth herein.

108.   The Defendant City of New York and the NYPD negligently failed to provide for the safety, security and protection of the Decedent by failing to comply with the New York Patrol Guide as it relates to handling EDPs and taser use.

109.   In addition, the Defendant City of New York and NYPD negligently failed to prevent the within incidents of extraordinary violence and intentional infliction of physical and emotional distress by the individually-named Defendants who were acting within the course and scope of their employment for the said defendants.

110.   In addition, the individually-named NYPD Defendants violated § 500 of the New York State Corrections Law to the extent they were acting in their capacity as jailers.  The individually-named Defendants' interaction with the Decedent occurred at a three-quarter house, Narco Freedom House No. 19, Decedent's residence at the time.

111.   As a result of the foregoing, the Decedent sustained serious physical injuries that resulted in his death.

## EIGHTH CAUSE OF ACTION
### (Wrongful Death under New York State Law)

112.   Plaintiffs hereby repeat and reallege, each and every allegation in paragraphs 1 through 111, inclusive, as if fully set forth herein.

113.    The Defendants' wrongful acts of attacking, tasering, battering, cutting, preventing the Decedent from seeking immediate medical attention, and the failure to properly treat the Decedent after being tasered, injured, cut and traumatized, caused the wrongful death of ANTHONY PAUL II.

114.    As a result of the foregoing, the Defendants are liable for the injuries and wrongful death of the Plaintiffs' Decedent.

## NINTH CAUSE OF ACTION
**(Intentional Torts under New York State Law- Assault, Battery and False Arrest)**

115.    Plaintiffs hereby repeat and reallege, each and every allegation in paragraphs 1 through 114, inclusive, as if fully set forth herein.

116.    As a result of the individually-named Defendant Police Officers' actions, including the tasering of the Decedent multiple times as well as forcefully entering the Decedents' room without a warrant and using an electrical saw that wounded him, the Decedent was wrongfully assaulted, battered, handcuffed, detained, confined and arrested without just or probable cause or provocation.

117.    As a result of the foregoing, the Decedent suffered serious physical injuries, pain, loss of enjoyment of life, and ultimately death.

## TENTH CAUSE OF ACTION
**(Medical Malpractice as to Defendants NYC HH and North Central Bronx Hospital)**

118.    Plaintiffs hereby repeat and reallege, each and every allegation in paragraphs 1 through 117, inclusive, as if fully set forth herein.

119.    Defendant NYC HH owned, operated, controlled and managed Defendant North Central Bronx Hospital.  Defendant NYC HH provided personnel, including, doctors, nurses, attendants and others for the care and treatment of Defendant North Central Bronx Hospital's patients and held itself out to the public as furnishing treatment facilities where patients, including the Decedent, could be treated.

120.    Defendants NYC HH and North Central Bronx Hospital held themselves out to the public as organizations employing and managing hospitals which employ physicians and staff that possess the proper degree of learning and skill and that through its employees, agents, staff and servants, they use reasonable care and diligence in the treatment of their patients, including the Decedent herein.

121.    The medical care, diagnosis, treatment and services rendered by the Defendants NYC HH and North Central Bronx Hospital  was rendered carelessly, unskillfully, negligently, and not in accordance with accepted standards of medical care, diagnosis, treatment and services within the industry.

122.    It was the duty of Defendants NYC HH and North Central Bronx Hospital and/or their agents, servants, employees to possess such reasonable degree of skill and learning as is ordinarily possessed by physicians, nurses, residents, interns, physician, and other such personnel, to use reasonable care, diligence and judgment in the exercise of such skills and in the application of such learning; to employ in the treatment of patients, like the Decedent, approved methods of care and treatment in general use in the community; and to comply with all relevant statutes and regulations in regards to their treatment of the Decedent as well as to adhere to the standards of proper medical, surgical and hospital care and treatment.

123.    Defendant NYC HH and North Bronx Central Hospital deviated from the acceptable standard of care by failing and neglecting to properly treat Decedent for his condition. Defendant NYC HH and North Bronx Hospital should have provided a sedative and/or anti-anxiety medication to reduce Decedent's heart rate before he suffered cardiac arrest following tasering and the trauma associated with his arrest.  This failure to properly diagnose and treat Decedent's condition was a deviation from good and accepted principles of medical practice. (See Exhibit 1, Certificate of Merit).

124.    By reason of the above and in conjunction with the police misconduct, the Decedent sustained great pain, agony, injury, and suffering, emotional distress, which led to his death.

### ELEVENTH CAUSE OF ACTION
### (Medical Malpractice as to Defendant EMS)

125.    Plaintiffs repeat and reallege, each and every allegation in paragraphs 1 through 124, inclusive, as if fully set forth herein.

126.    Defendant EMS held itself out to the public as a health organization with medical personnel that possessed the proper degree of learning and skill, and that its employees, agents, staff and servants use reasonable care and diligence in the transportation and treatment of the Decedent.

127.    At all relevant time, Defendant EMS supervised, managed and controlled the drivers, attendants, physicians, employees and/or personnel who transported and rendered care and other services to the Decedent.

128.    Defendant EMS deviated from the standard of care owed to the Decedent by failing to properly assess the Decedent, in failing to timely assess the Decedent, in negligently delaying the transport of the Decedent to North Central Bronx Hospital, in negligently permitting

24

the Decedent from receiving appropriate medical care and treatment; and for administering medical services and/or treatment on the Decedent that deviated from the proper standards of care within the community.

129. In particular, the Decedent presented to the EMS personnel as being in need of sedatives and/or anti-anxiety medication after having been tasered, injured, cut and traumatized by police activity. By failing to administer these drugs, the combination of police misconduct, an increased heart rate and trauma among other indicia of increased agitation required that the Decedent be given proper sedatives and/or anti-anxiety medicine to slow his heart rate. Their failure to do so was a cause of his death and further exacerbated his injuries. (See Exhibit 1, Certificate of Merit).

130. That by reason of the foregoing, the Decedent sustained serious personal injuries and other medical conditions that have resulted in his death.

That this action falls within one or more of the exceptions set forth in CPLR 1602.

131. Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants owed the Plaintiffs a non-delegable duty of care.

132. Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

133. Pursuant to CPLR Section 1602(2)(iv), the Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss,

irrespective of the provisions of the CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of each other and/or others who caused or contributed to the Plaintiffs' damages.

134.    Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiffs' injuries.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against the Defendants, containing the following relief:

A.    An award of damages in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest, to compensate Plaintiffs for their monetary and/or economic damages;

B.    An award of damages in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest, to compensate Plaintiffs for all their non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish and emotional distress, humiliation, embarrassment, stress, conscious pain and suffering, pecuniary loss, anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries and wrongful death;

C.    An award of costs that Plaintiffs has incurred in this action, as well as Plaintiffs' reasonable attorneys' fees under 42 U.S.C. § 1983 and to the fullest extent permitted by law; and

D.     Punitive damages against the individually-named Police Defendants in their individual capacities; and

E.     Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact and damages.

Dated: New York, New York
        March 16, 2016

Yours, etc.,

Derek S. Sells, Esq. (DS-8891)
THE COCHRAN FIRM
Attorneys for Plaintiff
55 Broadway, 23rd Floor
New York, New York 10006
(212) 553-9215

27

<u>ATTORNEY'S VERIFICATION</u>

STATE OF NEW YORK  )
                ).SS:
COUNTY OF NEW YORK)

      The undersigned, an attorney, duly admitted to practice law in the United States District Court, Southern District of New York, and hereby deposes and states that:

      I am Managing Partner of the law firm THE COCHRAN FIRM, attorneys for the plaintiff, in the above action. I have read the annexed **VERIFIED COMPLAINT** and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following: investigation, interviews with client, records, reports, documents, correspondence, data, memoranda, etc., contained in the file.

      The reason I make this verification instead of plaintiff, is that the plaintiff resides out of the County of New York, wherein I maintain my offices.

      I affirm that the foregoing statements are true under the penalties of perjury.

Dated: New York, New York
      March 16, 2016

                                    DEREK S. SELLS