16 CV 01952 (VSB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY ANDRE PAUL, et al.,

Plaintiffs,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

**DEFENDANTS CITY OF NEW YORK, VINCENT GIORDANO, EUGENE MCCARTHY, MICHAEL LICITRA, ANTHONY DIFRANCESCA, RICHARD HEFNER, ARAMIS RAMOS, DARREN MCNAMARA, ANDREW MCCORMACK, FINBARR MCCARTHY, AND KEVIN O'DOHERTY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Vincent Giordano, Eugene McCarthy, Michael*
*Licitra, Anthony DiFrancesca, Richard*
*Hefner, Aramis Ramos, Darren McNamara,*
*Andrew McCormack, Finbarr McCarthy, and*
*Kevin O'Doherty*
*100 Church Street*
*New York, NY 10007*

*Of Counsel:  Susan P. Scharfstein*
*Tel:  (212) 356-2355*
*Matter No.:  2016-010604*

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 3

      A.    Plaintiffs' Allegations Concerning the
           Underlying Events ...................................................................................... 3

      B.    Plaintiffs' <u>Monell</u> Allegations ................................................................... 4

      C.    Relevant Procedural History ...................................................................... 5

ARGUMENT

     POINT I

           PLAINTIFFS CANNOT PURSUE CLAIMS
           AGAINST CERTAIN DEFENDANTS FOR
           UNLAWFUL ENTRY OR EXCESSIVE FORCE ........................................ 6

     POINT II

           PLAINTIFFS HAVE FAILED TO ALLEGE A
           <u>MONELL</u> CLAIM AGAINST THE CITY ...................................................... 7

     POINT III

           THE CLAIM FOR NEGLIGENT HIRING,
           TRAINING, AND SUPERVISION SHOULD BE
           DISMISSED ............................................................................................... 13

     POINT IV

           THE CLAIM FOR SUPERVISORY LIABILITY
           SHOULD BE DISMISSED AGAINST THE NON-
           SUPERVISORY DEFENDANT OFFICERS ............................................. 14

     POINT V

           PLAINTIFFS FAIL TO ALLEGE FACTS TO
           SUSTAIN A FAILURE TO INTERVENE CLAIM
           AGAINST ANY DEFENDANT .................................................................. 15

**Page**

POINT VI

    THE CLAIM FOR NEGLIGENCE AND/OR
    STATE STATUTORY VIOLATIONS IS ALSO
    FLAWED ................................................................................................. 18

POINT VII

    THE WRONGFUL DEATH AND INTENTIONAL
    TORT CLAIMS SHOULD BE DISMISSED AS
    TO ALL DEFENDANTS ..................................................................... 20

POINT VIII

    THE COURT SHOULD DISMISS THE
    MEDICAL MALPRACTICE CLAIM AGAINST
    THE CITY .............................................................................................. 22

CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Pages</u>

Amnesty Am. v. Town of W. Hartford,
    361 F.3d 113 (2d Cir. 2004) ................................................................................... 11

Appalachian Enterprises v. Epayment Solutions,
    01 Civ. 11502 (GBD), 2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 8, 2004) ..................... 16

Applewhite v. Accuhealth,
    21 N.Y.3d 420 (2013) ........................................................................................... 22

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .......................................................................................... 6, 12

Estate of Bah v. City of New York,
    13 Civ. 6690 (PKC), 2017 U.S. Dist. LEXIS 13285 (S.D.N.Y. Jan. 31, 2017) ............... 11, 12

Bardavid v. New York City Transit Auth.,
    97 A.D. 2d 353, 467 N.Y.S.2d 360 (1st Dep't 1983),
    aff'd, 61 N.Y.2d 986 (1984) .............................................................................. 22-23

Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown,
    520 U.S. 397 (1997) ............................................................................................. 12

Bell Atlantic v. Twombly,
    127 S. Ct. 1955 (2007) ........................................................................................... 6

Blackstock v. Board of Education,
    84 A.D.3d 524, 921 N.Y.S.2d 858 (1st Dep't 2011) ................................................. 23

Bouche v. City of Mount Vernon,
    11 Civ. 5246 (SAS), 2012 U.S. Dist. LEXIS 40246 (S.D.N.Y. Mar. 23, 2012) .................... 19

Bradley v. City of New York,
    08 Civ. 1106 (NGG), 2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. June 18, 2009) ................... 12

Brandon v. City of New York,
    705 F. Supp. 2d 261 (S.D.N.Y. 2010) ..................................................................... 16

Brown v. City of New York,
    73 A.D.3d 1113, 902 N.Y.S.2d 594 (2d Dep't 2010) ................................................. 24

Chamberlain v. City of White Plains,
    986 F. Supp. 2d 363 (S.D.N.Y. 2013) ..................................................................... 20

City of Canton v. Harris,
    489 U.S. 378 (1989) .......................................................................................... 8, 11

| Cases | Pages |
|---|---|

City of Revere v. Massachusetts Gen. Hosp.,
  463 U.S. 239 (1983).........................................................................................6

City of St. Louis v. Praprotnik,
  485 U.S. 112 (1985).........................................................................................8

Cockburn v. City of New York,
  129 A.D.3d 895, 10 N.Y.S.3d 630 (2d Dep't 2015).......................................23

Connick v. Thompson,
  563 U.S. 51 (2011).........................................................................................10

Covington v. City of New York,
  171 F.3d 117 (2d Cir. 1999) ..........................................................................21

Cuevas v. City of New York,
  07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009) ....................12

Cuffy v. City of New York,
  69 N.Y.2d 255 (1987)...........................................................................22, 23, 25

DeMartino v. Zenk,
  No. 04 Civ. 3880 (SLT) (LB),
  2006 U.S. Dist. LEXIS 33454 (E.D.N.Y. May 25, 2006) ...............................7

DiMichele v. City of New York,
  09 Civ. 9334 (PGG),
  2012 U.S. Dist. LEXIS 136460 (S.D.N.Y. Sept. 24, 2012)..............................11

Dinardo v. City of New York,
  13 N.Y.3d 872 (2009)................................................................................23, 24

Dixon v. Village of Spring Valley,
  6 A.D.3d 489, 774 N.Y.S.2d 574 (2d Dep't 2006).........................................20

Ehrens v. Lutheran Church,
  385 F.3d 232 (2d Cir. 2004) ..........................................................................14

Farrell v. Burke,
  449 F.3d 470 (2d Cir. 2006) ............................................................................7

Freeman v. City of New York,
  111 A.D.3d 780, 975 N.Y.S.2d 141 (2d Dep't 2013).....................................23

Galapo v. City of New York,
  95 N.Y.2d 568 (2000)....................................................................................18

**Cases** <span style="float:right">**Pages**</span>

Gomez v. City of New York,
  05 Civ. 2147 (GBD) (JCF),
  2008 U.S. Dist. LEXIS 41455 (S.D.N.Y. May 28, 2008),
  adopted by, 2008 U.S. Dist. LEXIS 63012 (S.D.N.Y. Aug. 14, 2008) .................................21

Griffin v. City of New York,
  880 F. Supp. 2d 384 (E.D.N.Y. 2012) ........................................................................18

Jaquez v. City of New York,
  104 F. Supp. 3d 414 (S.D.N.Y. 2015) ..........................................................................8

Jean-Laurent v. Wilkinson,
  540 F. Supp. 2d 501 (S.D.N.Y. 2008) .........................................................................16

Jenkins v. City of New York,
  478 F.3d 76 (2d Cir. 2007) ......................................................................................11

Johnson v. County of Nassau,
  2010 U.S. Dist. LEXIS 101752 (E.D.N.Y. Sept. 27, 2010) ..................................................16

Karoon v. New York City Transit Auth.,
  241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997) ..........................................................13

Laratro v. City of New York,
  8 N.Y.3d 79 (2006)...............................................................................................22

Lauer v. City of New York,
  95 N.Y.2d 95 (2000)..........................................................................................19, 22

Lopez v. City of New York,
  15 Civ. 1650 (NRB), 2017 U.S. Dist. LEXIS 8472 (S.D.N.Y. Jan. 10, 2017)........................18

Lopez v. City of New York,
  186 F. Supp. 2d 304 (S.D.N.Y. 2016) ........................................................................18

Mesa v. City of New York,
  09 Civ. 10464 (JPO), 2013 U.S. Dist. LEXIS 1097 (S.D.N.Y. Jan. 3, 2013) .......................19

Monell v. Department of Social Servs.,
  436 U.S. 658 (1978)........................................................................................2, 8, 13

Munafo v. Metropolitan Transit Auth.,
  285 F.3d 201 (2d Cir. 2002) ...................................................................................17

O'Neill v. Krzeminski,
  839 F.2d 9 (2d Cir. 1988) ......................................................................................16

**Cases**                                                                                                               **Pages**

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985)............................................................................................................7

Ortiz v. City of New York,
    15 Civ. 2206 (DLC),
    2016 U.S. Dist. LEXIS 165219 (S.D.N.Y. Nov. 30, 2016).....................................18

Padavan v. United States,
    82 F.3d 23 (2d Cir. 1996) .................................................................................................6

Papineau v. Parmley,
    465 F.3d 46 (2d Cir. 2006) ...........................................................................................18

Pelaez v. Seide,
    2 N.Y.3d 186 (2004).......................................................................................................23

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986).....................................................................................................7, 8

People v. De Bour,
    40 N.Y.2d 210, 386 N.Y.S.2d 375 (1976).....................................................................21

People v. Molnar,
    98 N.Y.2d 328, 746 N.Y.S.2d 673 (2002).....................................................................21

Poe v. Leonard,
    282 F.3d 123 (2d Cir. 2002) .........................................................................................17

Posr v. Doherty,
    944 F.2d 91 (2d Cir. 1991) ......................................................................................20-21

Pub. Adm'r of Queens County v. City of New York,
    06 Civ. 7099 (LBS), 2009 U.S. Dist. LEXIS 18350 (S.D.N.Y. Feb. 24, 2009).....................20

Radvin v. City of New York,
    119 A.D.3d 730, 991 N.Y.S.2d 609 (2d Dep't 2014).....................................................23

Rollins v. New York City Board of Education,
    68 A.D.3d 540, 889 N.Y.S.2d 456 (1st Dep't 2009) ....................................................23

Rubio v. City of New York,
    No. 03 Civ. 1349 (SJ) (KAM),
    2005 U.S. Dist. LEXIS 44256 (E.D.N.Y. Apr. 22, 2005).....................................21

Salim v. Proulx,
    93 F.3d 86 (2d Cir. 1996) ...........................................................................................8, 9

**Cases**                                                                                                         **Pages**

Scalpi v. Town of E. Fishkill,
    14 Civ. 2126 (KMK), 2016 U.S. Dist. LEXIS 24521 (S.D.N.Y. Feb. 29, 2016)....................15

Sforza v. City of New York,
    07 Civ. 6122 (DLC), 2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. Mar. 31, 2009)....................16

Siegert v. Gilley,
    500 U.S. 226 (1991)..........................................................................................................17

Sugarman v. Equinox Holding,
    73 A.D.3d 654, 901 N.Y.S.2d 615 (1st Dept't 2010) ............................................................13

Swinton v. City of New York,
    08 Civ. 3278 (RJD) (RML),
    2011 U.S. Dist. LEXIS 32384 (E.D.N.Y. Mar. 28, 2011)......................................................9

United Nat'l Ins. v. Tunnel, Inc.,
    988 F.2d 351 (2d Cir. 1993) ...............................................................................................18

United States v. Wilson,
    699 F.3d 235 (2d Cir. 2012) ...............................................................................................11

Valdez v. City of New York,
    18 N.Y.2d 69 (2011)......................................................................................................22, 24

Victory v. Pataki,
    814 F.3d 47 (2d Cir. 2016) ...................................................................................................7

Vippolis v. Vill. of Haverstraw,
    768 F.2d 40 (2d Cir. 1985) ...................................................................................................8

Williams v. City of New York,
    916 F. Supp. 2d 235 (E.D.N.Y. 2012) .................................................................................14

In re World Trade Cent. Bombing Litig.,
    17 N.Y.3d 428 (2011) .........................................................................................................20

**Statutes**

42 U.S.C. § 1983........................................................................................1, 7, 11, 16, 20

CPLR 3211(a)(7) .................................................................................................................23

Fed. R. Civ. P. 8..............................................................................................................1, 16

Fed. R. Civ. P. 8(a)(2)..................................................................................................1, 16, 17

**Statutes**                                                                                           **Pages**

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 12, 16

**Other Authorities**

N.Y. Est. Powers & Trusts Law § 5-4.1 ........................................................................20

Defendants City of New York, Vincent Giordano, Eugene McCarthy, Michael Licitra, Anthony DiFrancesca, Richard Hefner, Aramis Ramos, Darren McNamara, Andrew McCormack, Finbarr McCarthy, and Kevin O'Doherty submit this memorandum of law in support of their motion to dismiss certain of plaintiff's claims with prejudice pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case arises out of the July 2, 2015 death of Anthony Andre Paul II ("Paul"), an emotionally disturbed person ("EDP"), who, at the time of the events herein, was a resident of Narco Freedom, Inc.'s Freedom House 19, a supervised setting for individuals suffering from substance addictions located in the Bronx, New York. Paul had been placed at the facility by United States Probation authorities, in whose custody he was while on supervised release from a federal correctional facility for a period of two years.

On the evening of July 1, 2015, police officers responded to a 911 call for assistance from a staff member at the facility, who stated that Paul had refused to leave his shared apartment and had denied access to his roommate and Narco Freedom staff. The 911 caller also stated that Paul was believed to under the influence of a mind-altering substance, namely, the synthetic narcotic known as K-2. After multiple attempts over a period of hours to extricate Paul voluntarily and safely from the location to facilitate the treatment that he so obviously needed, Paul was transported by Montefiore paramedics to North Central Bronx Hospital where, tragically, he died.

In this ensuing lawsuit, plaintiffs Anthony Andre Paul and Alberty Paul, Paul's father and uncle, respectively, in their capacities as co-Administrators of his estate, allege various claims. Plaintiffs' central claims in this action brought pursuant to 42 U.S.C. § 1983, are that the defendant police officers violated Paul's rights by unlawfully entering his apartment and using excessive force. On that basis, plaintiffs allege federal claims for unlawful entry, excessive force, supervisory liability, and failure to intervene against ten individual officer defendants, as well as a claim pursuant

to <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978), against the City of New York.  (<u>See</u> <u>generally</u> Amended Complaint ("AC")).  Plaintiffs also assert supplemental state law claims for negligent hiring, training, and supervision, negligence and/or state statutory violations, wrongful death, and intentional torts against the City and/or the officer defendants.  Lastly, plaintiffs allege that the City committed medical negligence by the failure of Emergency Medical Services of the City ("EMS") to administer sedatives, which was a departure from accepted medical practice and a cause and/or contributing factor in Paul's death.[1]

Defendants do not concede the truth of plaintiffs' factual contentions, but, rather, assume them to be true solely for the purposes of this motion to dismiss.  With that in mind, it is clear that a number of the claims lack legal merit as to one or more of the defendants.  Accordingly, defendants now move to dismiss the federal claims for unlawful entry and excessive force as to defendants McCormack and Finbarr McCarthy, the <u>Monell</u> claim against the City, the state law claim for negligent hiring, training, and supervision against the City, the claim for supervisory liability against the individual defendants who did not hold supervisory roles, the failure to intervene against all of the individual defendants, the claim against the City for negligence and/or statutory violations under state law, the wrongful death and intentional tort claims against all defendants, and the medical malpractice claim against the City based on the alleged failings of EMS.  If the Court grants this motion, as it should, the scope of discovery will be appropriately cabined and the parties may proceed the more expeditiously to summary judgment and/or trial.

---

[1] Plaintiffs also allege pendent state claims for medical malpractice against co-defendants New York City Health & Hospitals Corporation ("HHC") and North Central Bronx Hospital ("NCBH"), entities which are separately represented in this lawsuit.

## STATEMENT OF FACTS

### A.   Plaintiffs' Allegations Concerning the Underlying Events

According to plaintiffs, on the late evening of July 1, 2015, into the early morning of July 2, 2015, Paul was subjected to excessive force and false arrest by NYPD officers.  (AC at ¶ 1).  The NYPD's Emergency Services Unit ("ESU"), a specialized unit that is tasked with responding to emergencies involving barricaded suspects and EDPs, was responsible for the matter involving Paul. (Id. at ¶ 43).  When the defendant officers arrived, Paul was naked, locked in a room for several hours, not presenting a danger or any immediate threat of serious physical injury or death to himself or to others, while he was suffering from an emotional disturbance that he could not control.  (Id. at ¶¶ 1, 2, 44, 50).

The officers sought to investigate what was transpiring in the apartment through the use of cameras, by unlocking the door on multiple occasions (whereupon Paul turned the locking mechanism to prevent entry), and enlisting the assistance of a hostage negotiator, who attempted to communicate with Paul to facilitate entry and treatment for his emotional disturbance.  (Id. at ¶¶ 45, 48).  When those attempts failed, ultimately, under the direction and order of Giordano, McCarthy, and Licitra, certain defendant officers, with the use of a saw blade, attempted to breach the door.  (Id. at ¶ 54).  Paul, who was guarding the door, came into contact with the blade.  (Id.)  Paul's arms and hands were cut multiple times.  (Id.)  As he bled profusely, the officers, including DiFrancesca, Hefner, Ramos, McNamara, and O'Doherty, effected a full breach of the door and, on entering, used excessive force and unnecessary electrical current (tasers) to arrest Paul.  (Id. at ¶ 55).  Captain McCarthy made the decision to breach the door.  (Id.)  The officers sawed their way into his room, cutting and slashing Paul in the process.   (Id. at ¶ 2).  As he bled profusely, DiFrancesca and NcNamara utilized two tasers against NYPD rules of conduct, and deployed the tasers a total of thirteen times, well more than the three cycles permitted by the NYPD rules.  (Id. at ¶¶ 2, 57, 58).

Although Paul had done no more than exhibit signs of emotional disturbance, Ramos and Hefner handcuffed him and effected an unlawful arrest. (Id. at ¶¶ 1, 3, 60).

EMS personnel were summoned to assist Paul. (Id. at ¶ 60). They assured Paul that they would care for him, and told him that he would be "okay." (Id. at ¶¶ 117-118). Yet, observing his condition – agitated and combative – they failed to administer sedatives, which could have slowed his heart rate. (Id. at ¶¶ 4, 61). This error was compounded by medical staff at NCBH where, again, no sedatives were administered and, shortly after his arrival, Paul's heart stopped and he died. (Id. at ¶ 5).

B.     **Plaintiffs' <u>Monell</u> Allegations**

Plaintiffs allege that the perceived wrongs by the individual defendants were carried out in keeping with an unconstitutional policy, practice and/or rule of the NYPD of forcefully entering the space of an isolated and contained EDP and needlessly escalating a non-confrontational encounter to one requiring a forceful confrontation between the EDP and police. (Id. at ¶¶ 51, 74). According to plaintiffs, this policy, practice and/or rule is in deliberate indifference to the constitutional rights of Paul and other EDPs and/or mentally infirmed individuals to be secure in their persons. (Id. at ¶¶ 52, 75).

In support of this theory, plaintiffs rely solely on:

•     A contention that the NYPD was on notice of the harm that has occurred in "such situations" at least as far back as April 29, 2014, as a result of a writing signed by former Chief of Department Phillip Banks, in connection with another incident, stating that "[o]n several occasions in the past, while attempting to make partial door breaches to insert cameras, the emotionally disturbed person has charged the door. Once it occurred, ESU personnel have no choice but to engage. If the door was never breached, they [wouldn't have] found themselves in that situation." (Id. at ¶ 53).

•     A generalized claim that the individually-named defendant police officers who sawed and tasered with regard to Paul were improperly trained, supervised, and retained in violation of the

standards set forth by <u>Monell</u>, as they had known histories of using excessive force and were known threats to members of the public.  (<u>Id.</u> at ¶ 79).

Significantly, plaintiffs cite – and seemingly do not take issue with – the City's written guidance on the handling of EDPs as set forth in the NYPD Patrol Guide.  According to plaintiffs, the relevant Patrol Guide provisions state that, when police encounter an EDP who does not present an immediate threat of serious physical injury or death to himself or others, they are to attempt to "isolate and contain" the EDP, that the number of tasers that can be used against a single person is limited to one, that officers are to reassess the condition of the individual after each discharge, and that the number of discharges permitted is limited to three.  (<u>Id.</u> at ¶¶ 49, 57-58).  Plaintiffs allege that the individual defendants failed to follow this guidance in their handling of the underlying incident involving Paul.  (<u>See id.</u> at ¶¶ 51, 59).

## C.    Relevant Procedural History

Plaintiffs initiated this action on March 16, 2016, against the City of New York, EMS of the FDNY, twenty-four members of the NYPD, HHC, and NCBH.  Thereafter, the parties agreed to the terms of a confidentiality stipulation and proposed order, which was entered by the Court on September 26, 2016.  Beginning on September 30, 2016, through October 26, 2016, the City produced extensive documentation (including audiovisual materials) concerning the underlying incident in the possession of various City agencies.  Those materials encompassed NYPD internal investigatory documents maintained by the Force Investigation Division and the Internal Affairs Bureau.  They included records maintained by other NYPD units, namely, the Technical Assistance Response Unit, the Crime Scene Unit, and ESU.  They also included materials originating from the FDNY, the Office of the Chief Medical Examiner, the Comptroller's Office, and the Bronx County District Attorney's Office.

On November 14, 2016, in keeping with the Court's Individual Rules of Practice, defendants sought a pre-motion conference to address their proposed motion to dismiss.  During a November 30,

2016 conference, plaintiffs were granted leave of Court to amend their complaint.  The motion was deferred pending the amendment.  Plaintiffs amended the complaint on October 25, 2016.[2]  This motion follows.  As plaintiffs have had ample opportunity to amend their complaint with the benefit of substantial pre-discovery disclosures from the City, and nonetheless still have failed in myriad respects to state viable claims for relief, this action should be dismissed with prejudice as set forth in this motion.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim, a plaintiff must satisfy the "facial plausibility" pleading standard set forth in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A pleading must be supported by allegations that are not merely conclusory, but put forth underlying facts so as to make a claim plausible on its face.  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1974 (2007).  A motion to dismiss should be granted where it is beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief.  See Padavan v. United States, 82 F.3d 23, 26 (2d Cir. 1996).  As plaintiffs have failed to plead facts that give rise to a plausible inference that each of the defendants violated one or more of Paul's rights, Iqbal, 556 U.S. at 678, certain claims advanced in the AC are legally insufficient and should be dismissed at this stage.

## POINT I

## PLAINTIFFS CANNOT PURSUE CLAIMS AGAINST CERTAIN DEFENDANTS FOR UNLAWFUL ENTRY OR EXCESSIVE FORCE

Plaintiffs allege that the individual defendant officers unlawfully entered Paul's apartment without a warrant and used excessive force.[3]  They have not, however, alleged facts sufficient to

---

[2] Plaintiffs voluntarily withdrew their claims against 15 individual defendants and EMS, presumably as a result of reconsidering their legal positions and based on a review of the documents that the City had produced.

[3] Although not expressly set forth as a distinct claim, plaintiffs appear to also allege Eighth Amendment violations. (AC at ¶¶ 12, 15, 71).  That theory does not, however, apply here, as there are no allegations that, at the time of the events, the decedent was a convicted inmate.  See, e.g., City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).

sustain a claim for unlawful entry or excessive force against defendants McCormack and Finbarr McCarthy.  The AC sets forth no facts to support that either of these defendants entered the apartment or used force, or even that they were present at the time of these alleged events.  It is settled in this Circuit that the personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983.  See Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016); Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).  As an individual defendant may be liable only when he personally subjects, or causes to be subjected any person to the deprivation of a federal right, a motion to dismiss should be granted where, as here, the AC lacks factual allegations to support how each of them violated one or more of Paul's rights.  See, e.g., DeMartino v. Zenk, No. 04 Civ. 3880 (SLT) (LB), 2006 U.S. Dist. LEXIS 33454, at *21-22 (E.D.N.Y. May 25, 2006).  Absent facts to show that either McCormach or Finbarr McCarthy was involved in any such violation, these claims should be dismissed as to each of them.  Nor should they be tethered to this lawsuit on any other claim, as there are no facts alleged to support that they committed any wrong as to Paul.

## POINT II

## PLAINTIFFS HAVE FAILED TO ALLEGE A <u>MONELL</u> CLAIM AGAINST THE CITY

The Monell claim against the City is lacking for a variety of reasons.  Plaintiffs have failed to allege facts to support the existence of a widespread illegal policy, custom, or practice of the City.  Nor have they alleged facts to support that a specific deficiency in training was the cause of a violation of any of Paul's rights.

To hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault.  Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).  A municipality may not be held liable under § 1983 by application of the doctrine of respondeat superior.  Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986).  "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took

some action that caused him injuries . . . .  Second, the plaintiff must establish a causal connection –

an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v.

Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).

To state a claim for municipal liability, a plaintiff must plausibly allege one of four types of

violations:  (1) the existence of a formal policy, officially promulgated or adopted by a municipality,

Monell, 436 U.S. at 690; (2) actions taken or decisions made by a final municipal policymaker that

caused the alleged violation of the plaintiff's rights, Pembaur, 475 U.S. at 483-84; (3) an unlawful

practice so widespread that it constitutes "custom or usage," and implies the constructive knowledge

of policymakers, City of St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1985); or (4) a failure to train

or supervise that amounts to "deliberate indifference" to the rights of those with municipal

employees come in contact.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiffs' first theory of municipal liability appears to be that the City had a policy, practice

and/or rule of the NYPD of forcefully entering the space of an isolated and contained EDP and

needlessly escalating a non-confrontational encounter to one requiring a forceful confrontation

between the EDP and police.  (AC at ¶¶ 51, 74).  This theory of Monell liability, if true, does not

state a claim for a violation of a federally-protected right.  That is, in this Circuit, the courts do not

look to events that preceded a confrontation to evaluate the reasonableness of a use of force. They

instead hold that law enforcement officers are not liable for creating a situation in which the use of

deadly force was likely to occur.  See, e.g., Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996) (applying

qualified immunity because it was objectively reasonable for officer to believe that the force was not

excessive when used in self defense); Jaquez v. City of New York, 104 F. Supp. 3d 414, 433, 437

(S.D.N.Y. 2015) (dismissing one officer outright and holding that qualified immunity applied to

another).

Salim is instructive here.  That case arose from an officer's pursuant and eventual fatal

shooting of a boy who had recently escaped from juvenile detention.  The plaintiff (his mother)

8

alleged that the officer had himself created the situation in which the use of deadly force became necessary, by violating police procedure in several respects before the shooting had taken place. The court found that the officer's alleged failings in advance of the shooting were irrelevant because the Fourth Amendment reasonable inquiry depends only on the officer's knowledge of the circumstances immediately before and at the moment that he made the split-second decision to utilize deadly force. 93 F.3d at 92.[4]

As if that were not enough, the conclusory nature of plaintiffs' allegations warrant dismissal of the policy claim.  See Swinton v. City of New York, 08 Civ. 3278 (RJD) (RML), 2011 U.S. Dist. LEXIS 32384, at *15-17 (E.D.N.Y. Mar. 28, 2011) (dismissing as conclusory plaintiff's claim that [ADA's] inflate charges).  Analysis of the little that plaintiffs have offered in the way of specific facts underscores that their theory of municipal liability is lacking for this additional reason.

In support of this theory, plaintiffs appear to rely solely on an April 29, 2014 writing attributed to former Chief of Department Banks, in connection with the Mohammed Bah matter, to the effect that, on several past occasions, while attempting to make partial door breaches to insert cameras, the EDP had charged the door, leaving ESU personnel with no choice but to engage, where they otherwise would not have had to do so.  (AC at ¶ 53).  This does not, however, support a plausible inference that the statement reflects the existence of an unconstitutional policy.  Plaintiffs offer no support for the conclusion that this statement had the intent or effect of denying civilians their constitutional rights.  If anything, this writing, dating from little more than a year before the Paul incident, is more fairly construed as raising a thoughtful inquiry as to law enforcement best practices in light of evolving experience with EDPs.  It is no more than anecdotal in nature, and in no way reflects either a decision by an official at a policymaking level to deny Paul his rights or the

---

[4] The Salim decision is consistent with "pre-seizure conduct" cases from other Circuits.  The common rationale is that the courts reject claims that a use of force was unreasonable because the officers' prior conduct created the danger of escalation.  See Salim, 93 F.3d at 92, and cases cited therein.  In such cases, courts within this Circuit and

existence of a widespread unlawful practice by subordinates so permanent and settled as to constitute a custom or usage for the purposes of a claim for municipal liability.  It cites "several occasions in the past," suggesting that they were few and far between, and may well have been attenuated in time. There is no factual basis to conclude that they are related in any particular way to one another or bear any similarity to the circumstances presented by the underlying incident.  This type of diffuse allegation does nothing to assist plaintiff in establishing a causal link between any policy of the City and Paul's alleged injuries.

Taking plaintiffs' allegations as true, they state no viable claim for municipal liability against the City of New York.  Even assuming an underlying violation of one or more of Paul's constitutional rights, plaintiff has alleged no facts to establish the existence of a widespread City policy, custom or practice that was the cause of a violation of a federally-protected right, as he must do at this stage to sustain a Monell claim.  Plaintiffs' policy claim is of the type that courts routinely dismiss where, as here, they cite  no evidence of a "widespread custom, policy or practice" for the purposes of a policy claim.

Plaintiffs' next theory of municipal liability appears to be based on the City's alleged failure to train, supervise, and retain the defendant police officers, who are alleged to have had prior histories of using excessive force and were therefore known threats to the public.  (Id. at ¶¶ 79-80). Municipal liability, however, "is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011).  To allege deliberate indifference in the context of a failure to train claim, a plaintiff must plead facts that give rise to a plausible inference that:  (1) the municipality knows "to a moral certainty" that its employees will confront a given situation; (2) either the situation presents the employees with a difficult choice of the sort that training or supervision will make less difficult, or that there is a history of employees mishandling the situation;

---

others have disregarded evidence of prior conduct, focusing only on "the split-second decision to employ deadly force." Id.

and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007).

Over and above a showing of deliberate indifference, a plaintiff must also identify "a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting City of Canton, 489 U.S. at 391).  A plaintiff must demonstrate that the municipal employee's "'shortcomings . . . resulted from . . . a faulty training program' rather than from negligent implementation of a sound program or other, unrelated circumstances." Id. at 129-30 (quoting City of Canton, 489 U.S. at 390-91).[5]  That an officer may have violated policy does not, without more, reflect inadequate training on the City's part. See DiMichele v. City of New York, 09 Civ. 9334 (PGG), 2012 U.S. Dist. LEXIS 136460, at *68-69 (S.D.N.Y. Sept. 24, 2012).

Yet, here, plaintiffs have offered only generalities.  They rely solely on generalized claims that the defendant police officers were improperly trained, supervised, and retained.  Plaintiffs have alleged no specific deficiency in training that was the cause of Paul's injuries.  Notably, plaintiffs appear satisfied with official guidance as set forth in the Patrol Guide, which they cite throughout the AC.  (AC at ¶¶ 51-53, 57-59, 74-75, 79).  There are no specific facts from which one could infer the existence of a specific training deficiency, let alone that it evidences deliberate indifference and was the cause of violation of Paul's rights.  If anything, they complain that the defendant officers should have conformed their conduct to the relevant Patrol Guide provisions, which, according to plaintiffs, they failed to do.

---

[5] A plaintiff cannot merely demonstrate that policymakers knew that officers frequently failed to follow the Patrol Guide or other internal procedures. Bah v. City of New York, 13 Civ. 6690 (PKC), 2017 U.S. Dist. LEXIS 13285, at * 18-19 (S.D.N.Y. Jan. 31, 2017).  Section 1983 does not provide a remedy for violations of best police practices. Id. at *19 (citing United States v. Wilson, 699 F.3d 235, 238, 242 (2d Cir. 2012) (Fourth Amendment does not incorporate local statutory or regulatory restrictions, so that a seizure in violation of departmental policy does not amount to a constitutional violation).

11

Certainly, in and of themselves, the contents of the Banks writing were insufficient to place the City on notice of a specific training deficiency for the purposes of a <u>Monell</u> claim.  As a result, it cannot plausibly be inferred that the City was deliberately indifferent to the risk that some flaw in its training would lead to would lead to any deprivation of Paul's rights.  In considering the very same language in the Banks writing earlier this week, Judge Castel recognized that a theory of municipal liability cannot be based on the mere fact that officers' breaching doors in the past had caused EDPs to charge the doors, as it was not sufficient to show deliberate indifference on the part of the City. <u>See</u> <u>Estate of Bah</u>, 2017 U.S. Dist. LEXIS 13285, at *24.[6]

A plaintiff cannot rely on generalized allegations of municipal liability such as these to avoid a motion to dismiss. <u>Cuevas v. City of New York,</u> 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009) ("Plaintiff's boilerplate allegations against the City … satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in <u>Iqbal</u>"); <u>Bradley v. City of New York</u>, 08 Civ. 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *10 (E.D.N.Y. June 18, 2009) (dismissing claim pursuant to Fed. Civ. P. 12(b)(6)).  If the contrary were the case, any plaintiff could readily cobble together broad language into his or her complaint, thereby surviving a motion to dismiss and gaining access to costly and burdensome discovery in the hopes of unearthing a claim.

Plaintiff have offered no facts from which it may plausibly be inferred that the City had a widespread illegal custom or policy with regard to forcefully entering the space of an EDP and needlessly escalating a non-confrontation encounter, and that such a policy drove the manner in which the officers handled Paul.  Nor have they alleged facts to establish that the City's training was constitutionally deficient with respect to the use of force so as to cause a violation of Paul's rights.

---

[6] With regard to a <u>Monell</u> claim based on hiring, a plaintiff must plead that an adequate screening would have revealed that the particular officer was highly likely to inflict the particular injury suffered by the plaintiff and that the link between the applicant's background was strong. <u>Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 411-12 (1997).  Plaintiffs have alleged no such facts.

As there are no allegations from which it may plausibly be inferred that any of Paul's rights were violated as a result of a municipal policy, custom, or practice, the claim for municipal liability based on <u>Monell</u> and its progeny should be dismissed.[7]

### POINT III

### THE CLAIM FOR NEGLIGENT HIRING, TRAINING, AND SUPERVISION SHOULD BE DISMISSED

The AC alleges that, at the relevant times, the individual defendants were acting within the scope of their employment with the City.  Plaintiffs nonetheless advance a state law claim against the City for negligent hiring, training, and supervision.  This claim, set forth in the Fourth Cause of Action, is legally defective because it is incompatible with plaintiffs' theory of <u>respondeat</u> <u>superior</u> liability.  It is also flawed for plaintiffs' failure to allege facts to support that the City, as employer, was on notice of an employee's propensity for the wrongful conduct alleged.  The claims should be dismissed for either of these independent reasons.

Under New York law, where an employee acts within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of <u>respondeat</u> <u>superior,</u> a claim cannot proceed against the employer for negligent hiring or retention.  <u>See,</u> <u>e.g.,</u> <u>Karoon v. New York City Transit Auth.,</u> 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (1st Dep't 1997).  This claim is incompatible with plaintiffs' <u>respondeat</u> claim against the City as a matter of law.  <u>See</u> <u>Sugarman v. Equinox Holding,</u> 73 A.D.3d 654, 901 N.Y.S.2d 615, 616 (1st Dep't 2010).  Courts have found that, where an employee was acting within the scope of his employment and was not negligent, there is no basis to impose liability on the employer sued on a <u>respondeat</u> theory.  <u>See,</u> <u>e.g.,</u> <u>Karoon,</u> 659 N.Y.S.2d at 29.  If, however, the employee was negligent, then the employer must pay the judgment regardless of the reasonableness of the hiring or retention

---

[7] Should the Court deny the motion on this issue, the City fully reserves its rights to move to bifurcate <u>Monell</u> for the purposes of discovery and trial at the appropriate time.

or the adequacy of the training. Id.  Here, plaintiffs allege that the individual defendants acted within the course and scope of their employment by the City.  (AC at ¶ 95).  They also allege that each of the individual defendants acted as a "representative" of the City, (id. at ¶¶ 26-35), and therefore presumably by and on behalf of the City and in furtherance of its business.  As a consequence, plaintiff's contentions are fundamentally at odds with one another and this claim should be dismissed at this stage.

Moreover, to pursue such a claim, plaintiffs also must plausibly allege, inter alia, that the employer knew or should have known in advance of the employee's propensity for the wrongful conduct.  See, e.g., Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004); see also Williams v. City of New York, 916 F. Supp. 2d 235, 245 (E.D.N.Y. 2012) (employer must know of employee's propensity for the conduct which caused the injury prior to the injury's occurrence). Conspicuously absent are any specific facts set forth in the AC to support the bares-bones contentions that the defendant officers had prior histories of using excessive force and were known threats to the public, as plaintiffs contend.  (See AC at ¶ 84).   Without specific facts to support a propensity of this nature as to any individual defendant, the claim should be dismissed.

**POINT IV**

**THE CLAIM FOR SUPERVISORY LIABILITY SHOULD BE DISMISSED
AGAINST THE NON-SUPERVISORY DEFENDANT OFFICERS**

The derivative claim for supervisory liability, which is set forth in the Fifth Cause of Action, is alleged collectively against one or more of the individual defendants on the basis that "[u]pon information and belief, among the individually-named Police Officer Defendants were supervisors who were assigned to supervise and control the actions of the named NYPD Defendant Officers." (AC at ¶ 87).  A number of the individual defendants were not, however, supervisors at the time of the relevant events.  Specifically defendants DiFrancesca, Hefner, McNamara, McCormack, and Finbarr McCarthy, are alleged to have been NYPD detectives at the relevant times.  (Id. at ¶¶ 29-30,

14

32-34).  Defendant Ramos is alleged to have been a police officer at the relevant times.  (Id. at ¶ 31).

In the capacity of police officer or detective, these defendants did not hold supervisory roles.

To state a claim for supervisory liability, a plaintiff must unquestionably allege facts to

support that a particular defendant was a supervisor at the time of the relevant events.  Supervisory

liability derives from the conduct of a subordinate.  Scalpi v. Town of E. Fishkill, 14 Civ. 2126

(KMK), 2016 U.S. Dist. LEXIS 24521, at * 49 (S.D.N.Y. Feb. 29, 2016).  Plaintiffs have failed to

come forward with any factual basis to support that six of these defendants had any supervisory role.

Rather, based on plaintiffs' allegations, the supervisors involved were Giordano (a deputy chief),

Eugene McCarthy (a captain), Licitra (a lieutenant), and O'Doherty (a sergeant).  (AC at ¶¶ 26, 27,

28, 35).  According to the AC, the decisions and orders to breach the door with a saw blade and then

to make a full entry, were made by one or more of three of these four officers.  (Id. at ¶¶ 54, 55).

Again, the remaining individual defendants, DiFrancesca, Hefner, Ramos, McNamara, McCormack,

and Finbarr McCarthy, are all alleged to have been at the rank of detective or police officer at the

time of the events.  (Id. at ¶¶ 29-34).  This claim, legally flawed as it is, should be dismissed as to

these six defendants.

## POINT V

### PLAINTIFFS FAIL TO ALLEGE FACTS TO SUSTAIN A FAILURE TO INTERVENE CLAIM AGAINST ANY DEFENDANT

A claim for a failure to intervene is derivative of other, underlying wrongful conduct.  Here,

it can only be derivative of plaintiffs' claims for excessive force, as plaintiffs have not alleged a

federal claim for false arrest.  (See generally AC).  Plaintiffs contend, essentially, that the individual

defendants were legally required to intercede on observing illegal conduct, namely, that Paul was

struck by multiple tasers in excess of the three times permitted by guidelines and was taken into

custody.  (AC at ¶¶ 90, 91).  The AC, however, does not allege facts to support that any of the

defendant officers would have had a reasonable opportunity to intercede to prevent any harm to Paul.

Any claim for a failure to intervene must be supported by facts to demonstrate not only the underlying wrongful conduct, but also that the officer in question was aware of the conduct, had a realistic opportunity to intervene to prevent the harm, and failed to do so. See, e.g., Johnson v. County of Nassau, 09 Civ. 4746 (MLO) (JO), 2010 U.S. Dist. LEXIS 101752, at *10-11 (E.D.N.Y. Sept. 27, 2010) (granting Rule 12(b)(6) motion); Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988). Plaintiffs do not, however, cite any facts to support that any of the defendants were on notice of and had a realistic opportunity to prevent any alleged harm to Paul as a result of wrongful conduct by another officer.

Additionally, to the extent that plaintiffs allege this claim collectively against all of the individual defendants, rather than cite facts to link a particular defendant to this cause of action, the claim is facially deficient and should be dismissed. A plaintiff must establish § 1983 liability as to a particular individual defendant. To this extent, the AC fails to conform to the pleading requirements of Rule 8(a)(2) and case law holding that a claim brought pursuant to § 1983 must be crafted so as to give each defendant fair notice of the claims and must be based on the personal involvement of each of the defendants. See, e.g., Brandon v. City of New York, 705 F. Supp. 2d 261, 268-69 (S.D.N.Y. 2010) (Rule 8 requires fair notice to each defendant officer of the claims asserted against him by identifying facts that support the claims); Sforza v. City of New York, 07 Civ. 6122 (DLC), 2009 U.S. Dist. LEXIS 27358, at *19-21 (S.D.N.Y. Mar. 31, 2009) (granting motion to dismiss where plaintiff sued multiple officers and failed to allege the personal involvement of any in any of the actions that allegedly violated her rights). A pleading must identify a particular defendant who committed a specific act of alleged wrongdoing. Appalachian Enterprises v. Epayment Solutions, 01 Civ. 11502 (GBD), 2004 U.S. Dist. LEXIS 24657, at *21, 26 (S.D.N.Y. Dec. 8, 2004) (where plaintiff has made no attempt to differentiate in pleading which act was taken by which party, he has failed to satisfy the notice pleading standard).

In this fashion, the AC is also crafted to evade a qualified immunity defense, which depends upon an individualized determination of the alleged misconduct. Poe v. Leonard, 282 F.3d 123, 134 (2d Cir. 2002) (qualified immunity analysis requires that a court "carefully examine the specific factual allegation against each individual defendant"). To assess this defense, a court must consider whether the facts adduced against a particular defendant could establish a violation of a constitutional right and, if so, whether the defendant's actions were objectively reasonably in light of the then-clearly established law. Munafo v. Metropolitan Transit Auth., 285 F.3d 201, 210-11 (2d Cir. 2002); Siegert v. Gilley, 500 U.S. 226, 232 (1991). As plaintiffs' pleading is defective, it is impossible to do so here. The Court should not countenance this inadequate and deceptive pleading practice.

Here, plaintiffs received leave of Court to amend their complaint with the benefit of had substantial pre-discovery disclosures by the City, including internal investigatory documents and extensive witness statements. Yet they still appear unable to allege predicate facts to proceed with this claim as against any of the defendants. For example, plaintiffs do not allege facts to support which, if any, of the defendants were in a position, in a tense, fast-evolving scenario, to see that the tasers were utilized at the same time and to stop them from continuing to be deployed. If anything, it is highly implausible that any of the defendants would have had an opportunity to prevent others from sawing their way into Paul's room, cutting and slashing him in the process, and firing multiple tasers at him at the same time and in excess of the three cycles permitted by NYPD guidelines, as plaintiffs allege that they did. (See AC at ¶¶ 2, 54-58). Certainly, as to defendants McCormack and Finbarr McCarthy, there are no facts alleged to support that they were near the apartment, were aware of what is alleged to have transpired at the time of the events, and failed to intercede to prevent another officer from unlawfully entering the apartment or using excessive force against Paul. Accordingly, plaintiffs have failed to satisfy the straightforward Rule 8(a)(2) standard and, to this extent, the AC should be dismissed as to each of the individual defendants.

**POINT VI**

**THE CLAIM FOR NEGLIGENCE AND/OR STATE STATUTORY VIOLATIONS IS ALSO FLAWED**

Plaintiffs appear to predicate their claims against the City for negligence and/or state statutory violations, first, on the theory the City negligently failed to provide for Paul's safety by failing to comply with the Patrol Guide as it relates to the handling of EDPs and the use of tasers.  (AC at ¶ 94).[8]  They further theorize that that the City negligently failed to prevent incidents of extraordinary violence and intentional infliction of physical and emotional distress by the individual defendants who were acting within the course and scope of their employment.  (Id. at ¶ 95).

As an initial matter, plaintiffs have not specified any state statutory provision that the City may have violated and that led to any injury to Paul.  The Patrol Guide is not a state statue.  It is guidance for members of the NYPD, which has not been codified by the state legislature and does not otherwise not have the force of state law.  See, e.g., Lopez v. City of New York, 186 F. Supp. 2d 304, 313 n.7 (S.D.N.Y. 2016) (noting that the NYPD Patrol Guide '"is not a body of law or regulation establishing clear legal duties that should serve as basis for civil liability of municipalities"') (quoting Galapo v. City of New York, 95 N.Y.2d 568, 575 (2000) (characterizing the Patrol Guide as "an internal manual")); Griffin v. City of New York, 880 F. Supp. 2d 384, 398 (E.D.N.Y. 2012) (Patrol Guide is a manual intended to provide guidance on the most common practices of the NYPD and articulate performance expectations, and is not law).  Even assuming that the Patrol Guide were the equivalent of state law, it should be clear from the AC that the City is not

---

[8] The NYPD is not a suable entity.  Lopez v. City of New York, 15 Civ. 1650 (NRB), 2017 U.S. Dist. LEXIS 8472, at *2 n.1 (S.D.N.Y. Jan. 10, 2017).  To the extent that plaintiffs may intend to assert this claim against the individual defendants, they cannot do so, as they claim that those defendants engaged in intentional acts.  (AC at ¶¶ 1, 14).  A claim of harm predicated solely on intentional acts, (e.g., that Paul was "viciously cut and wounded," (Id. at ¶ 1), that the officers' conduct was "knowing, malicious, and wanton," (id. at ¶ 14)), is incompatible with a claim for negligence.  See, e.g., United Nat'l Ins. v. Tunnel, Inc., 988 F.2d 351, 353 (2d Cir. 1993); Ortiz v. City of New York, 15 Civ. 2206 (DLC), 2016 U.S. Dist. LEXIS 165219, at *7-8 (S.D.N.Y. Nov. 30, 2016).  In any event, the officers are entitled to the benefit of New York's expansive doctrine of good faith immunity for a law enforcement officer who exercises discretion and judgment that are integral to his role.  See, e.g., Papineau v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006).

alleged to have violated the terms of that document by virtue of its direct participation in the underlying incident involving Paul.

As for the second theory, plaintiffs have not alleged the elements of a claim for negligence against the City. To do so, they would be required to allege facts to support a duty owed to Paul by the City, a breach of that duty, and an injury substantially caused by the breach. See, e.g., Bouche v. City of Mount Vernon, 11 Civ. 5246 (SAS), 2012 U.S. Dist. LEXIS 40246, at *19 (S.D.N.Y. Mar. 23, 2012). As more fully set forth in Point VIII below, a municipality cannot be sued directly for common law negligence unless it can be shown that the municipality owed a specific duty to the plaintiff. See Lauer v. City of New York, 95 N.Y.2d 95, 100-01 (2000). That duty must be more than that owed to the public generally. Id. In this case, the City owed no special duty to Paul, above and beyond what it owed to the public at large.

Further, this general negligence claim is redundant of plaintiffs' claim for negligent hiring, training, and supervision. To the extent that plaintiffs allege that the City failed in its duty to prevents acts of violence by the individual defendants, these contentions are a mere restatement of their claim for negligent hiring, training, and supervision. The latter claim is, in any event, a more specific claim that renders plaintiffs' negligence claim redundant and superfluous. A general negligence claim against the City that is duplicative of claims for negligent hiring, retention, supervision, and training is not viable and should be dismissed. See Bouche, 2012 U.S. Dist. LEXIS 40246, at *31.[9] Additionally, under state law, a plaintiff may not recover under general negligence principles for alleged wrongdoing that is remediable under traditional tort remedies. Mesa v. City of New York, 09 Civ. 10464 (JPO), 2013 U.S. Dist. LEXIS 1097, at *101 (S.D.N.Y. Jan. 3, 2013) (false arrest). In the present case, it appears that plaintiffs intend to pursue a theory of respondeat

---

[9] This claim also is inconsistent with plaintiffs' Monell claim, which alleges deliberate indifference and a policy of "forcing entry" when police encounter an EDP that does not present an immediate threat of harm. (See AC at ¶¶ 51-52, 74-75). To the extent that a policy of the City is alleged to have been the cause of violations of federally-protected rights, no negligence claim can lie here.

liability as to the City on the state claims for assault, battery, and false arrest. This also renders the negligence claim superfluous. Lastly, municipal entity cannot be held liable for the negligent performance of a governmental function. Dixon v. Village of Spring Valley, 6 A.D.3d 489, 774 N.Y.S.2d 574, 576 (2d Dep't 2006). Rather, a municipal corporation is entitled to interpose an immunity defense when official action involves the exercise of discretion or expert judgment in policy matters and is not ministerial. See In re World Trade Cent. Bombing Litig., 17 N.Y.3d 428, 452 (2011).

**POINT VII**

**THE WRONGFUL DEATH AND INTENTIONAL TORT CLAIMS SHOULD BE DISMISSED AS TO ALL DEFENDANTS**

To state a claim for wrongful death, the decedent's personal representative must plead several elements, including the survival of distributes who suffered pecuniary loss by reason of the decedent's death. Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (citing Pub. Adm'r of Queens County v. City of New York, 06 Civ. 7099 (LBS), 2009 U.S. Dist. LEXIS 18350, at *34-35 (S.D.N.Y. Feb. 24, 2009); N.Y. Est. Powers & Trusts Law § 5-4.1). The AC contains no reference to the existence of distributees who suffered any financial or pecuniary loss as a result of Paul's death. The Court can thus readily dispose of this claim.

It appears that plaintiffs also intend to pursue intentional tort theories against the officers, namely, theories of assault, battery, and false arrest.[10] The assault and battery claims should be dismissed for the same reason and to the same extent as their federal analogue, the § 1983 excessive force claim. The elements of state law assault and battery claims are substantially the same as a Fourth Amendment excessive force claim brought pursuant to § 1983, except for the state action requirement. Chamberlain, 986 F. Supp. 2d at 398 (citing Posr v. Doherty, 944 F.2d 91, 94-95 (2d

---

[10] It is unclear whether this claim is also asserted against the City; however, it appears that plaintiffs may intend to pursue a claim against the City based on a theory of vicarious liability. In any event, any such claim is derivative, and should fall away to the same extent as the underlying claim against the officer(s) by operation of law.

Cir. 1991)).  Therefore, to the extent that the excessive force claim is dismissed as to defendants McCormack and Finbarr McCarthy, as discussed above, the same result should apply to the state law assault and battery claims.

As for the false arrest claim, it appears to arise from the allegation that Paul was handcuffed and turned Paul over to EMTs for transport to NCBH.  (AC at ¶ 60).  It was clear – and plaintiffs concede – that he was both physically injured and emotionally disturbed.  (Id. at ¶¶ 2, 3, 44). According to the AC, he was naked and locked in a room, bleeding from numerous cuts to his arms and hands, and did not respond to attempts by a hostage negotiator to allow police to enter his apartment for the purpose of facilitating treatment.  (Id. at ¶¶ 44, 48, 54, 55).  Taking account of all of these factors, it cannot be said that plaintiffs have plausibly alleged facts to support the essential elements of a false arrest claim, that is, an intentional confinement without justification.  See, e.g., Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999).

An individual's right to be free of a seizure is not implicated in emergency situations wherein the officer's role is to render aid rather than to effect an arrest or to seize evidence.  See, e.g., Rubio v. City of New York, No. 03 Civ. 1349 (SJ) (KAM), 2005 U.S. Dist. LEXIS 44256, at *12 (E.D.N.Y. Apr. 22, 2005); People v. Molnar, 98 N.Y.2d 328, 746 N.Y.S.2d 673, 676 (2002).  State law recognizes an officer's affirmative duty to assist persons in need of aid.  See, e.g., Rubio, 2005 U.S. Dist. LEXIS 44256, at *12; People v. De Bour, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 381-82 (1976) (recognizing the "public service aspect of the police function" and the "multiplicity and complexity of tasks assumed by the police").  According to the AC, Paul, who was disturbed and injured, was restrained and transported by EMTs to NCBH.  There are no facts alleged to the effect that Paul was taken to a police precinct, held in police custody, or processed as an arrest.  Moreover, state law immunity shields the actions of police officers and their employers where the underlying conduct was reasonable, see Gomez v. City of New York, 05 Civ. 2147 (GBD) (JCF), 2008 U.S. Dist. LEXIS 41455, at *35 (S.D.N.Y. May 28, 2008), adopted by, 2008 U.S. Dist. LEXIS 63012

(S.D.N.Y. Aug. 14, 2008), as it undoubtedly was here.  There can therefore be no viable claim for false arrest.

## POINT VIII

### THE COURT SHOULD DISMISS THE MEDICAL MALPRACTICE CLAIM AGAINST THE CITY

The Court should dismiss the claim alleging a failure to provide adequate emergency medical services, because plaintiffs have not plausibly alleged facts to support the existence of a special duty owed to Paul <u>or</u> that he justifiably relied on an affirmative undertaking by EMTs, both of which are essential to sustain a claim of this nature.

It is settled that municipalities are generally immune from claims of negligence arising out of the performance of governmental functions.  <u>Applewhite v. Accuhealth</u>, 21 N.Y.3d 420, 426 (2013); <u>Valdez v. City of New York</u>, 18 N.Y.2d 69, 75-76 (2011); <u>Lauer</u>, 95 N.Y.2d at 101.  Therefore, a plaintiff bringing such a claim bears a "threshold burden" of demonstrating the existence of a "special relationship" or "special duty" between the public entity and the injured party.  <u>Valdez</u>, 18 N.Y.2d at 80.  This applies where a duty is owed by the municipality to the public at large, rather than to a single individual.  <u>Cuffy v. City of New York</u>, 69 N.Y.2d 255, 260 (1987).  The special duty requirement applies to calls for emergency medical services, with respect to both the ambulance dispatch function of the 911 system and the on-scene care rendered by municipal emergency medical providers.  <u>See</u>, <u>e.g.</u>, <u>Applewhite</u>, 21 N.Y.3d at 430; <u>Laratro v. City of New York</u>, 8 N.Y.3d 79, 83-84 (2006).  Whether there is a special duty sufficient to confer liability upon a governmental entity for a failure to properly perform a governmental function is a question of law for the court, rather than a question of fact for a jury.  <u>Valdez v. City of New York</u>, 18 N.Y.2d at 81; <u>see also</u> <u>Bardavid v.</u>

New York City Transit  Auth., 97 A.D. 2d 353, 467 N.Y.S.2d 360, 361 (1ˢᵗ Dep't 1983), aff'd, 61

N.Y.2d 986 (1984).  A failure to adequately plead a special duty warrants dismissal.[11]

A special duty can be created in three ways:  (1) through the breach of a statutory duty for the

benefit of a particular class of persons, provided that the governing statute authorizes a private right

of action or one can be fairly implied; (2) when the municipality assumes positive direction and

control in the face of a known, blatant and dangerous safety violation; and (3) when the municipality

voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the

duty.  E.g., Pelaez v. Seide, 2 N.Y.3d 186, 200 (2004).  In the present case, it appears that the

relevant inquiry is whether the City voluntarily assumed a duty to Paul.

To establish the voluntary assumption of a special duty, a plaintiff must prove all of the

following elements, which are prerequisites to holding the City liable in the context of a

governmental function:  (1) that the municipality had, through promises or actions, assumed an

affirmative duty to act on behalf of the party who was injured; (2) that the municipality's agents had

knowledge that inaction could lead to harm; (3) that there was some form of direct contact between

the municipality's agents and the injured party; and (4) that the injured party justifiably relied on the

municipality's affirmative undertaking.  Cuffy, 69 N.Y. 2d at 260.[12]

Courts have routinely rejected the notion that a general statement made by a City actor

concerning a person's well-being constitutes an "assurance" for the purposes of this analysis.   For

example, in Dinardo v. City of New York, 13 N.Y.3d 872 (2009), the plaintiff, a teacher, had alerted

---

[11] E.g., Blackstock v. Board of Education, 84 A.D.3d 524, 921 N.Y.S.2d 858, 858 (1ˢᵗ Dep't 2011) (citing Rollins v. New York City Board of Education, 68 A.D.3d 540, 889 N.Y.S.2d 456, 456 (1ˢᵗ Dep't 2009)); Cockburn v. City of New York, 129 A.D.3d 895, 10 N.Y.S.3d 630, 633 (2d Dep't 2015); Radvin v. City of New York, 119 A.D.3d 730, 991 N.Y.S.2d 609, 612 (2d Dep't 2014); see also Freeman v. City of New York, 111 A.D.3d 780, 975 N.Y.S.2d 141, 144 (2d Dep't 2013) (granting dismissal pursuant to CPLR 3211(a)(7) for failure to state any facts tending to demonstrate justifiable reliance or that a promise was made).

[12] As explained in Cuffy explained, the "special duty" analysis recognizes the unfairness of barring a recovery when "a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other avenues of protection."  69 N.Y.2d at 261.  Absent

her superior to concerns for her safety because of an aggressive student, and was told that "'things were being worked on, things were happening,' and urged her to 'hang in there because something was being done' to have the student removed." The teacher was then injured by the student. The court noted that such vaguely worded statements to the effect that work was being done, absent any indication of when, or if, it would actually happen, did not generate justifiable reliance as a matter of law. Id. at 874. In Brown v. City of New York, 73 A.D.3d 1113, 902 N.Y.S.2d 594, 596 (2d Dep't 2010), a police captain's comment to a woman who was fearful after physical confrontations with her neighbors stating "'don't worry. [I am] going to take care of it,'" was found insufficient to constitute an affirmative undertaking by the City. In Valdez, an alleged statement by police that officers would "arrest him immediately," speaking of the a former boyfriend who threatened to kill her, was similarly found too indefinite to support justifiable reliance. As the Court reasoned, "the officer's statement did not create a special relationship. It was not reasonable for Valdez to conclude, based on nothing more than the officer's statement that the police were going to arrest Perez "immediately," that she could relax her vigilance indefinitely, a belief that led her to exit her apartment some 28 hours later without further contact with the police. See Valdez, 18 N.Y.3d at 81.

Here, the AC fails to set forth a specific promise of definite action by a City actor, let alone one upon which the decedent could have justifiably relied to his detriment. Plaintiffs allege only in conclusory terms that EMTs assured Paul that "they would take care of him and ensure that he would be okay." (AC at ¶ 117). As reflected in Dinardo and Brown, any such generalized statement by EMTs would be woefully insufficient, as it would lack the necessary specificity to support justifiable reliance. Separate and apart from that, the AC fails to plead facts to show that Paul would have availed himself of an alternative avenue for assistance but for reliance on the alleged statements of EMS. This generality is belied by other facts pled in the AC. Plaintiffs concede that Paul had been

reliance, or a causal relationship between the reliance and the ultimate harm, the fairness concern is inapposite and the "special duty" exception does not apply. Id.

naked and locked in his room at a supervised facility, that a 911 call was made for assistance, that he did not respond to police or a hostage negotiator, and that he was emotionally disturbed and physically injured.  They contend that he had been tasered in excess of guidelines and was bleeding profusely, while his heart rate was accelerated to the point that he required sedation.  He was observed to be agitated and combative.  It is highly implausible that Paul could meaningfully have explored viable alternative avenues for treatment, and actually would have done so, but for the alleged statements by EMS personnel.  Plaintiffs have therefore failed to satisfy the fourth <u>Cuffy</u> element of detrimental reliance.

Viewed properly, the allegations of fact set forth in the AC fail to satisfy either the first <u>Cuffy</u> element of assumption of an affirmative duty or the fourth element of justifiable reliance.  As there are no grounds to overcome the City's general governmental immunity, the claim should be dismissed.

<u>**CONCLUSION**</u>

For the reasons set forth above, defendants' motion to dismiss should be granted in all respects and the above claims and parties be dismissed with prejudice at this time.

Dated:      New York, New York
            February 3, 2017

                              ZACHARY W. CARTER
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants*
                              100 Church Street
                              New York, NY  10007
                              (212) 356-2355
                              sscharfs@law.nyc.gov


                              By: _____/s/_____
                                   SUSAN P. SCHARFSTEIN