UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                      :

ANTHONY ANDRE PAUL, et al.,         :

                                        :

                       Plaintiffs,   :

                                        :           16-CV-1952 (VSB)

        - against -             :

                                          :              **ORDER**

                                        :

NORTH CENTRAL BRONX HOSPITAL, et  :
al.,                                        :

                                        :

                      Defendants.  :

                                        :
------------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

Currently pending before me are the parties' motions in limine, (Docs. 325–329), and

various evidentiary objections pertaining to the parties' respective exhibits as set forth in the

parties' supplemental motions in limine, (Docs. 347–349), and the joint amended exhibit list,

(Doc. 343).  On April 30, 2024, I held the Final Pretrial Conference in this matter during which I

ruled on the majority of the parties' motions in limine and resolved a number of the evidentiary

objections regarding disputed exhibits.  For the reasons stated on the record during the Final

Pretrial Conference and the following reasons, it is hereby:

ORDERED that Plaintiff's motion for an adverse inference instruction based on its claim

that the Hospital Defendants destroyed video evidence of the emergency room at North Central

Bronx Hospital is DENIED.

IT IS FUTHER ORDERED that the Hospital Defendants' motion in limine to preclude

Plaintiff from introducing Exhibit 38, the "Root Cause Analysis Report" prepared by the Quality

Assurance Department at North Central Bronx Hospital is GRANTED.  During the Final Pretrial

Conference, Plaintiff argued that certain statements within the report—specifically, the time

listed, 00:45, and the statement that "[t]he triage nurse and Attending physician went to assess the patient immediately upon arrival"—are admissible for their truth as admissions against the Hospital's interest.  (FPTC Tr.[1] 23:5 –17.)  Although Plaintiff did not cite to an applicable rule of Evidence, I construe Plaintiff's argument as being made pursuant to either Federal Rule of Evidence 801(d)(2) or 803(b)(3).

> Rule 801(d)(2) provides:
>
> (d) Statements That Are Not Hearsay.  A statement that meets the following conditions is not hearsay:  . . . (2) An Opposing Party's Statement.  The statement is offered against an opposing party and:  (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).  In failing to cite to Rule 801(d)(2), Plaintiff has also failed to specify which subsection it alleges applies.  Thus, in evaluating whether the relevant statements are inadmissible, I consider whether the statements in question meet the admissibility requirements of either subsection (C) or (D).  Under Rule 801(d)(2)(C), "[t]he relevant inquiry . . . is whether the person making the statements had the authority to speak on a particular subject on behalf of the party the admission is to be used against."  *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 260 (S.D.N.Y. 2003) (internal citations omitted).  By contrast, under Rule 801(d)(2)(D) the employee/agent need only have "made the statements within the scope of employment."  *Id*.  Under 801(d)(2)(C), therefore, the individual "must have had specific permission to speak on a subject," in contrast to Rule 801(d)(2)(D), where the individual "only had to have general authority of the business area."  *Id*.  "Whether the foundational predicate has been established for admitting a statement under Fed. R. Evid.

---

[1]  "FPTC Tr." refers to the April 30, 2024 Final Pretrial Conference transcript.

801(d)(2)(C) or (d)(2)(D) is [a] preliminary matter to be determined by the trial court." *Leser v. U.S. Bank Nat. Ass'n*, No. 09-CV-2362 (KAM) (MDG), 2012 WL 6738402, at \*4 (E.D.N.Y. Dec. 29, 2012) (citing *Hill v. F.R. Tripler & Co.*, 868 F. Supp. 593, 597 (S.D.N.Y. 1994) (internal quotation marks omitted)).

With respect to Rule 801(d)(2)(C), the record is devoid of the information necessary for me to evaluate whether the statements in the report were made by an individual who had "specific permission" to speak on the relevant subject. *Penguin Books*, 262 F. Supp. At 260. Here, the relevant subject is the time that Mr. Paul arrived at the hospital and when the nurse and attending physician assessed Mr. Paul. Although the Hospital Defendants concede that this document was prepared by the Quality Assurance Department at North Central Bronx Hospital, which is part of the hospital, Plaintiff did not take any steps to obtain the necessary foundational evidence in discovery. When I asked Plaintiff's counsel whether the document was shown to any witnesses during their deposition, or whether Plaintiff sought any discovery concerning this document, Plaintiff's counsel stated, "we had the admission, and didn't feel that we needed to do anything more." *See* (FPTC Tr. 33:23–34:24.) This statement is merely a conclusion and is clearly insufficient. As I mentioned during the Final Pretrial Conference, I disagree that the statement in the document itself constitutes an admission. In order to establish a sufficient foundation to meet the admissibility requirements under 801(d)(2)(C), Plaintiff should have taken further steps. Plaintiff did not, for example, file interrogatories or otherwise attempt to determine the genesis of the document, nor did Plaintiff seek to determine who prepared the document or from which records the statements recorded in the document were derived.

For the same reasons, Plaintiff has also failed to establish a sufficient foundation to support the introduction of these statements as admissions under Rule 801(d)(2)(D). The Second Circuit has noted that to establish a sufficient foundation for the introduction of statements

pursuant to this rule, which "may be established by circumstantial evidence," *Farganis v. Town of Montgomery*, 397 Fed.Appx. 666, 668 (2d Cir. 2010) (summary order) (internal citation and quotation marks omitted), a party need only establish "(1) the existence of [an] agency relationship [between the declarant and employer], (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency," *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).  Despite the Second Circuit's directive that "admissibility under [Rule 801(d)(2)(D)] should be granted freely," *id*., I nonetheless find that Plaintiff has failed to proffer any foundation, let alone one sufficient to allow me to evaluate whether the above factors are met.

Rule 804(b)(3) provides that a statement against interest is excluded by the rule against hearsay unless the declarant is unavailable as a witness and:

> (A) a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Plaintiff has failed to lay the foundation:  (1) for who might be viewed as the declarant in Exhibit 38; (2) that the declarant believed the statements in Exhibit 38 to be true when made; and (3) that the statements "[were] so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability."[2]  Therefore, the Hospital Defendants' motion is GRANTED and Plaintiff will not be permitted to introduce Exhibit 38 at trial.

---

[2] Because the Second Circuit "has not ruled on whether the special corroboration requirement is applicable in civil cases," I do not consider 804(b)(3)(B)'s requirement in reaching my ruling. *See Davis v. Velez*, 797 F.3d 192, 204 (2d Cir. 2015).  However, I note that if such a requirement were applicable, that Plaintiff has also failed to identify any "corroborating circumstances that clearly indicate [the] trustworthiness" of either statement.

IT IS FUTHER ORDERED that the Officer Defendants' motion in limine:

(1) to preclude the testimony of Dr. Whaley and Dr. Cohen is GRANTED in part and DENIED in part. Dr. Whaley will be permitted to offer his opinion as to the cause and manner of death, including his opinion regarding whether certain actions taken by the officers were contributing and/or exacerbating causes. Dr. Whaley will not, however, be permitted to testify as to police policies or procedures, including the appropriateness of the tactics and techniques employed by the officers. To the extent that either Dr. Whaley or Dr. Cohen testifies about matters outside the scope of their expertise, Defendants are permitted to object to specific portions of the expert testimony at trial;

(2) to preclude Plaintiff from introducing evidence or making arguments related to dismissed or withdrawn claims, including evidence related to the Bah incident, is GRANTED;

(3) to preclude Plaintiff from seeking economic damages in the form of reimbursement for funeral expenses is DENIED;

(4) to preclude Plaintiff from introducing any evidence or making any arguments about the NYPD and Bronx County DA's investigations into the use of force at issue in this case is GRANTED;

(5) to preclude Plaintiff from eliciting evidence of any officer's disciplinary history, prior lawsuits, or other incidents is GRANTED;

(6) to preclude Plaintiff from referring to defense counsel as City attorneys and suggesting that the City may indemnify the officers is GRANTED. Neither I nor the litigants shall address defense counsel as "City attorneys" throughout the duration of the trial and/or in the presence of the jury, and instead shall refer to defense counsel

as either "defense counsel," or "attorneys from the Office of the Corporation Counsel";

(7) to preclude Plaintiff from requesting a specific dollar amount from the jury is GRANTED in part and DENIED in part.  I will not permit Plaintiff to submit to the jury a specific dollar amount regarding damages for pain and suffering.  I will, however, allow Plaintiff to submit to the jury a specific dollar amount regarding any quantifiable, compensatory damages—such as funeral expenses—if Plaintiff presents admissible evidence to support a finding of such damages during its case in chief;

(8) to preclude Plaintiff from referencing allegations of police misconduct unrelated to this case is GRANTED.  The Officer Defendants' motion to preclude Plaintiff from using certain terminology such as "testilying" and "blue wall of silence" is DENIED without prejudice to renewal during trial.  If Plaintiff's counsel intends to use such terms during the trial, counsel must provide advance notice of such an intent;

(9) to preclude Plaintiff from offering evidence or argument regarding NYPD Policies and Procedures is GRANTED in part and DENIED in part.  Plaintiff's Exhibits 4 and 6, sections of the NYPD Patrol Guide, are admissible for the limited purpose of assisting the jury in determining the reasonableness of the officers' actions.  I will issue a curative instruction, the specific language of which I will circulate to the parties in advance, informing the jury regarding the proper use of these exhibits and to address any potential confusion or prejudice.  A ruling on the admissibility of Plaintiff's Exhibit 7, a section of the NYPD Patrol Guide titled "Mobile Criss Outreach Teams and Assertive Community Treatment Teams," is held in abeyance. Plaintiff must proffer a more sufficient foundation as to why Exhibit 7 is probative of

the reasonableness of the officers' actions, including why the exhibit is relevant in light of the fact that a "Mobile Crisis Outreach Team" was not dispatched;

(10)   The parties' request for a ruling on the admissibility of Plaintiff's Exhibits 54–57 various NYPD training materials regarding less lethal means, is held in abeyance pending Plaintiff's identifying and providing a proper purpose for the specific pages that Plaintiff intends to offer;

(11)   to preclude Plaintiff from offering evidence or argument that the officers should have responded in a different manner or that they should have used lesser or different force is DENIED, subject to such argument being framed as relevant to the objective reasonableness of the officers' use of force.  I will issue a curative instruction informing the jury regarding the limited purpose for which they may consider this evidence and to address any potential confusion or prejudice, the specific language of which I will circulate to the parties in advance;

(12)   to preclude Plaintiff from offering evidence or argument that the officers created the need to use force or that they exacerbated the situation is DENIED; and

(13)   to preclude the testimony of William Bratton and Philip Banks is GRANTED.

IT IS FUTHER ORDERED that the following rulings govern the admissibility of Plaintiff's objected-to Exhibits:

(1) A ruling on the admissibility of Plaintiff' s Exhibit 3, an excerpted copy of the North Central Bronx Medical Records, is held in abeyance pending my receipt of the parties' submission regarding which pages/portions of the certified record they believe are admissible;

(2) Plaintiff's Exhibits 14 and 28, NYPD reports of interviews conducted of non-party Hospital Police Officers Fraiser and Robinson, are excluded.  These documents

contain inadmissible hearsay, do not contain admissions, and Plaintiff has not

otherwise proffered a non-hearsay or proper purpose for their use during trial;

(3) A ruling on the admissibility of Plaintiff' s Exhibit 18, a diagram drawn by Chief

Giordano during his deposition testimony, is held in abeyance until trial.  The

admissibility of this record depends on Chief Giordano's testimony;

(4) Plaintiff's Exhibit 19, a video labeled "Bronx DA Video–2009-BXDA-Scene Video,"

is admissible subject to the appropriate foundation being laid and the removal of the

audio.  The Officer Defendants' objection that this evidence is cumulative of

photographs that Plaintiff intends to admit is overruled in light of the fact that the

video and photographs are different mediums that offer different perspectives of the

scene for the jury;

(5) Plaintiff's Exhibit 64, a video of the operation of the Sawzall, is excluded because I

find that the minimal probative value is substantially outweighed by the danger of

unfair prejudice.  Plaintiff is permitted to bring the Sawzall that was operated on the

day of the incident into the courtroom but is not permitted to operate the Sawzall in

front of the jury;

(6) Plaintiff's Exhibits 10 and 63, video footage from the scene, are plainly relevant and

admissible.  Both parties are permitted to play any portions of the video footage, as I

find that the mere cumulative nature of the videos is not prejudicial.  Plaintiff is

ordered to inform me as to whether the timestamps can be electronically blurred or

obscured.  If the timestamps cannot be blurred or obscured, I will issue a curative

instruction informing the jury that they may not rely on the timestamps for their truth,

as I find that Plaintiff has not proffered any means by which Plaintiff intends to

authenticate the accuracy of the timestamps.  Federal Rule of Evidence 901 provides

that "[t]o satisfy the requirement of authenticating or identifying an item of evidence,

the proponent must produce evidence sufficient to support a finding that the item is

what the proponent claims it is." Fed. R. Evid. 901.  In its submission and again

during the Final Pretrial Conference, Plaintiff directed me to *United States v.*

*Whittingham*, 346 Fed. Appx. 683 (2d Cir. 2009), which Plaintiff argues holds that

the accuracy of timestamps is a question of fact for the jury.  That argument ignores

the critical facts which distinguish the foundation laid for the timestamps in

*Whittingham* from that proffered by Plaintiff here.  In *Whittingham*, the Second

Circuit considered a defendant's objection to the district court's admission at trial of a

series of still images printed from surveillance videos which included timestamps.  *Id*.

at 684.  On appeal, the defendant argued that photographs violated the "best evidence

rule" and that they were not properly authenticated under Federal Rule of Evidence

901(a). *Id*.  With regard to the authentication issue, the court concluded that "the

government adequately authenticated the photographs through the testimony of the

bank employees regarding how the videos were recorded, collected, and time-

stamped, as well as the circumstantial evidence placing the defendant at her desk

during those times." (*Id*. at 685.)  Because the foundation for the admission of the

video with the timestamps had been laid, the court found that testimony regarding the

inaccuracy of the timestamps was an issue of weight, not admissibility.  The Second

Circuit did not hold, as Plaintiff suggests, that "a record custodian is not required

when there is testimony from other witnesses regarding the recording and other

circumstantial evidence." (Doc. 338 at 10.)  Indeed, it is certainly possible that one of

the bank employees who testified at trial was, in fact, a record custodian, or at least

could testify as to the relevant foundation necessary to admit the timestamps.  Thus,

the Second Circuit's holding in *Whittingham* that the district court did not abuse its

discretion in ruling that the evidence had been properly authenticated is of no use to

Plaintiff, and in fact supports the exclusion of the timestamps here. In *Whittingham*,

there was specific testimony that the district court considered as authenticating the

timestamps—the "testimony of the bank employees regarding how the videos were

recorded, collected, and time-stamped." *Whittingham*, 346 Fed. Appx. at 685.

Plaintiff has proffered no such evidence. Absent such a foundation, the timestamps

will not be admitted for their truth. Therefore, as noted above, Plaintiff is ordered to

inform me as to whether the timestamps can be electronically blurred or obscured;

(7) Plaintiff's Exhibits 23 and 24, photographs of different angles of Mr. Paul's arm, are

admissible, as these exhibits show apparent injuries to Mr. Paul's arm. Plaintiff's

Exhibit 37 is also admissible, as it is probative of the treatment that Mr. Paul received

at the hospital. Exhibit 34 is also admissible. When the Medical Examiner, Dr.

Monica Smiddy, was shown this photograph at her deposition and asked to identify

"where the hemorrhage occurred from the puncture wound that was on the right side

of [Mr. Paul's] neck," she indicated the wound reflected on the photo on the lower

part of Mr. Paul's neck. (Doc. 338-1 at 367:9–17.) Thus, Plaintiff has proffered a

sufficient foundation for its argument that this photograph is probative of Mr. Paul's

injuries. With the exception of Exhibits 35T, 35CC, and 35BBB, on which I will

reserve ruling, because each of the autopsy photographs contained in Exhibit 35

contain different angles, perspectives, and relative positions of certain injuries, they

are all admissible. With respect to Exhibits 35T, 35CC, and 35BBB, Plaintiff is

ordered to provide more detail regarding the proffered purpose for these three

photographs, including but not limited to any testimony from the Medical Examiner

or other witnesses regarding the relevance of these photos.  Absent such a basis, I will preclude these exhibits as unduly prejudicial.  I note that Exhibit 35C is a higher resolution photograph of Exhibit 37.  Plaintiff will only be permitted to introduce one of these photographs at trial;

(8) Plaintiff's Exhibits 17, 40–42, 44, 45, 58, and 61, photographs depicting different areas of the scene, are admissible.  The photographs are relevant and the mere cumulative nature of the photos is not prejudicial;

(9) Plaintiff's Exhibits 48–53, still images derived from video footage from the exterior of Mr. Paul's room, are admissible, as there is no prejudice in admitting the still images in light of counsel's ability to otherwise pause or stop the source-video while showing it to the jury.  Plaintiff is ordered to redact the timestamps from the still images;

(10)    The following of Plaintiff's Exhibits are admissible, subject to my ruling that I may exclude certain photographs as cumulative depending on the number of photographs that Plaintiff moves to admit at trial:  (i) Exhibits 65–67, 74, 75, and 82, photographs of the Sawzall; (ii) Exhibits 68–73 and 76–79, photographs of the cameras; (iii) Exhibits 80, 81, and 83–91, photographs of the tasers and taser cartridges; and (iv) Exhibits 92–98, photographs of the taser probes.  The photographs are relevant and the mere cumulative nature of the photos is not prejudicial; and

(11)    Plaintiff's Exhibits 74 and 82, photographs of the warning labels on the Sawzall and the taser are excluded because I find that the warning labels constitute inadmissible hearsay and because any probative value is substantially outweighed by the danger of unfair prejudice.  Plaintiff is permitted to question the witnesses regarding their knowledge and training with respect to the use of tasers and the

Sawzall, but Plaintiff is not permitted to introduce these exhibits or to ask the witnesses about their familiarly with warning labels unless the witness opens the door.

IT IS FUTHER ORDERED that the following rulings govern the admissibility of Defendants' objected-to Exhibits:

(1) A ruling on the admissibility of Defendants' Exhibits A-2 through A-10, which are various reports from the Office of the Chief Medical Examiner ("OCME") Case File, is held in abeyance pending the Officer Defendants' purpose for admitting the reports at trial.  Plaintiff does not object to the admissibility of Exhibit A-1, the OCME autopsy report, which is also Plaintiff's Exhibit 33.  Although the parties agree that pages DE766–774 of the OCME Case File contain the autopsy report, Plaintiff objects to the admissibility of DE766, the business record certification, alleging that the page contains hearsay.  Because Plaintiff does not object to the admission of the report for lack of authentication, the certification (DE766) is excluded;

(2) Defendants' Exhibit AA, a PYXIS Report which reflects a printout from an emergency room pharmacy device that was accessed by Germain Panes, one of the emergency room nurses, is admissible as a business record subject to the proper foundation being laid.  Plaintiff's objections go to the weight of the document, not its admissibility;

(3) Regarding Defendants' Exhibit T, an NYPD Investigation Follow-Up Report, I have reviewed the deposition testimony of Josip Sovulji, (Doc. 291-40), and I do not agree with Plaintiff's counsel's representation at the Final Pretrial Conference that the 30(b)(6) witness was "very clear that there was no way for the conclusion that the two Tasers were fired simultaneously to be made." (FPTC Tr. 136:4–5.)  The witness was

12

shown a taser report from number taser X00652967 which was generated on July 2,

2015 (which has been marked for trial as Plaintiff's Exhibit 1, and was marked for

purposes of the deposition as Exhibit 58), as well as a taser report from taser number

X00719703, which was also generated on July 2, 2015 (which has been marked for

trial as Plaintiff's Exhibit 2, and was marked for purposes of the deposition as Exhibit

51).  These taser reports depict the sequence of data downloaded from the two tasers

used in this case on July 2, 2015, including the firing data and any data reflecting

synchronization that was done, which appears in green rows.  (Doc. 291-40 at 33–48.)

The witness was then shown an "ESU Taser Sheet," marked for purposes of the

deposition as Exhibit 3 but which apparently has not been identified as an exhibit for

trial, which depicts different times than those listed on Exhibit 2.  (*Id*. at

49:15–52:13.)  The witness testified that he believed he knew why the times may be

different, and testified that there was "no recent time synchronization to make the

times listed on the sequences involved in July 2, 2015 accurate."  (*Id*. at 52:9–13.)

When the witness was asked whether he knew "when" and "if" synchronization was

done on the tasers, or if he saw any document that shows a synchronization of the

tasers, the witness stated that he had not "definitively" seen such a document, and that

he was "not aware" of any document reflecting synchronization.  (*Id*. at 67:6–21.)

Plaintiff's argument, in sum, is that this testimony binds the Officer Defendants from

introducing evidence which purportedly supports an argument that the tasers were

fired simultaneously.  At the Final Pretrial Conference, Plaintiff appeared to suggest

that absent sequence data reflecting synchronization on July 2, 2015, it would have

been impossible for the Force Investigation Division to have concluded that the tasers

were fired simultaneously. The problem with that argument, however, is that it is

wholly unsupported by the witness' testimony.  The witness was not asked to opine as

to whether synchronization had occurred, on July 2, 2015 or at any time thereafter,

nor did he testify, as Plaintiff suggests, that "no synchronization was done on the

tasers used against Mr. Paul that would account for the Force Investigation Division

later determining that they were fired simultaneously instead of more than four

minutes apart." (Doc. 345 at 4.)  I also disagree with Plaintiff's counsel's suggestion,

as stated at the Final Pretrial Conference, that "what this witness said is that if you do

not do the synchronization at the time of the download, then there's no way for you to

amend or change the times that are listed on the Taser report." (FPTC Tr. 136:1–14.)

As an initial matter, it is unclear what Plaintiff's counsel means by "amend or change

the times," as there has been no suggestion that the times listed on Exhibits 1 and 2

were amended or changed.  Regardless, there was no such testimony.  Notably, there

does not appear to be a dispute among the parties that the tasers used on July 2, 2015

were not synchronized.  In addition, Exhibit T depicts taser testing which was done

using X26 Software Version 24 on July 15, 2015.  This document reflects a 4 minute

and 49 second discrepancy between the time index readouts on the two tasers.

Plaintiff does not suggest that the testing on July 15, 2015, which shows substantially

the same discrepancy as that reflected in Exhibits 1 and 2, was unreliable.  Thus,

Plaintiff's argument that Exhibit T is inadmissible goes to the document's weight, not

its admissibility, and it will not be excluded on the basis raised by Plaintiff.

However, a ruling on the admissibility of Exhibit T is held in abeyance because it is

unclear whether this document should be excluded as within the scope of my ruling

granting the Officer Defendants' motion in limine to preclude Plaintiff from

introducing any evidence or making any arguments about the NYPD's investigations

into the use of force at issue in this case.  The Officer Defendants are directed to file a

letter by close of business on Monday, May 6, 2024 stating their position, including

whether Exhibit T was generated as part of NYPD investigation into the use of force

in connection with the incident in question;

(4) Defendants' Exhibits J and V, radio runs from the night of the incident are admissible

as business records subject to the proper foundation being laid.  With regard to

Defendants' Exhibits M, N, and O, the 911 calls, the admissibility of which Plaintiff

did not object to at the Final Pretrial Conference, these exhibits are admissible as the

statements on the 911 calls qualify as excited utterances or present sense impressions;

(5) The Officer Defendants' have indicated that they do not intend to offer Exhibits C, D,

F, G, I, K and Q, various records pertaining to Mr. Paul's previous incarcerations,

during their case.  To the extent that the Officer Defendants intend to use these

documents for rebuttal or impeachment on cross-examination, I will address the

appropriate use of these documents during trial;

(6) A ruling on the admissibility of Defendants' Exhibits E, H, and P, Mr. Paul's medical

records, is held in abeyance pending the Officer Defendants' proffering a sufficient

foundation.  Although experts may rely on inadmissible evidence when formulating

an opinion and when testifying, *see* Fed. R. Evid. 703, the Rule does not otherwise

permit admission of the underlying evidence absent a sufficient evidentiary basis; and

(7) A ruling on the admissibility of Defendants' Exhibit U, which contains various

photographs from the scene, including a photograph of a locker-like closet and a

small plastic bag labeled "AK-47," in held in abeyance pending my receipt of the

parties' submissions as to the proffered purpose for this evidence.

IT IS FUTHER ORDERED that the Officer Defendants and Hospital Defendants are

permitted to exercise three peremptory challenges each, and Plaintiff is permitted to exercise six

peremptory challenges.

IT IS FUTHER ORDERED that the following will serve as the summary of the case I

will give to the jury during voir dire:

> This is a civil case relating to an incident involving an individual named Anthony Paul, who at the time resided at a supervised living facility called "Freedom House" in the Bronx. On July 1, 2015, a Freedom House staff member called 911 reporting, among other things, that Mr. Paul had locked himself inside his shared apartment. New York City Police Officers ("NYPD Officers") responded to the scene. The NYPD Officers forcibly opened the apartment door and removed Mr. Paul from the apartment. He was transported to North Central Bronx Hospital, where he subsequently died. Plaintiff, the estate of Mr. Paul, has filed this lawsuit against the NYPD Officers alleging claims relating to their use of force and for wrongful death. Plaintiff has also brought claims alleging wrongful death and medical malpractice against the North Central Bronx Hospital and the New York City Health and Hospitals Corporation. Defendants deny all claims.

> The Clerk of Court is respectfully directed to terminate all open motions.

SO ORDERED.

Dated:      May 6, 2024
            New York, New York


Vernon S. Broderick
United States District Judge

16